[L. A. No. 7964.  In Bank.—February 6, 1925.]

LOS ANGELES CITY HIGH SCHOOL DISTRICT OF LOS ANGELES COUNTY, Respondent, v. PATRICK JOSEPH QUINN et al., Appellants.

[1] Deeds—Grant to Political Corporation—Acceptance—Recordation.—Deeds or grants conveying real estate, or an interest therein, to a political corporation or governmental agency cannot be accepted for recordation without the consent of the grantee evidenced by its resolution of acceptance attached to such deed or grant.

[2] Id.—Escrow—Valid Contract.—There must be a binding contract based on a valid consideration to support an escrow.

[3] Id.—Delivery—Compliance With Conditions.—Where a deed is placed in the hands of a third person, as an escrow, with an agree-

---

2. Escrow and deeds delivered in escrow, notes, 53 **Am. St. Rep.** 555; 130 **Am. St. Rep.** 910.

3. Effect on rights of parties of unauthorized delivery by escrowholder, note, **Ann. Cas.** 1917E, 435, 458.

Necessity of strict compliance with escrow agreement, note, **L. R. A.** 1916A, 502. See, also, 10 **R. C. L.** 635; 10 **Cal. Jur.** 589.

ment between the grantor and grantee that it shall not be delivered to the grantee until he has complied with certain conditions, the grantee does not acquire any title to the land, nor is he entitled to a delivery of the deed until he has strictly complied with the conditions, and if he does not comply with the conditions when required, or refuses to comply, the escrow-holder cannot make a valid delivery of the deed to him.

[4] ID. — ESCROW INSTRUCTIONS — AMBIGUITY—EVIDENCE.—Where escrow instructions are ambiguous and uncertain, it is the duty of the court to inquire into the circumstances and conditions which existed at the time of the negotiations between the parties for the sale and purchase of the property which resulted in the deposit of deeds with the escrow-holder.

[5] ID.—CONDITIONS OF ESCROW—PAYMENT OF TAXES.—Where by the terms of an option to purchase real property, and the acceptance, which resulted in the deposit of deeds with an escrow-holder, the purchaser agreed to pay a certain sum for the property, which was to be free of lien or encumbrance, except the taxes for a certain year, and the vendor, not being able to complete the escrow before the first installment of taxes would become delinquent, paid it, the latter had the right to make the repayment of this amount to her a condition of the delivery of the deeds by the escrow-holder, and upon the failure of the purchaser to comply with this condition the escrow-holder had no authority to deliver the deeds; and the undertaking of the purchaser to settle with the sellers for the taxes "outside of escrow," without the agreement of the latter thereto, was without effect.

(1) 18 C. J., p. 213, n. 71.    (2) 21 C. J., p. 866, n. 6.    (3) 21 C. J., p. 880, n. 61, p. 882, n. 91.    (4) 21 C. J., p. 870, n. 65.    (5) 21 C. J., p. 881, n. 76.

APPEAL from a judgment of the Superior Court of Los Angeles County.   K. S. Mahon, Judge Presiding.   Reversed.

The facts are stated in the opinion of the court.

Meserve & Meserve for Appellants.

Edward T. Bishop, County Counsel, J. N. O'Connor, Assistant County Counsel, Albert W. Leeds and Ivan G. McDaniel, Deputies County Counsel, for Respondent.

WASTE, J.—Defendants appeal from a judgment quieting the title of plaintiff to certain lands in the city of Los Angeles.   The plaintiff relies upon deeds of the property,

executed under escrow instructions, but not recorded. The defense in the trial court was that the defendants had not been divested of their title, for the reason that they had revoked the escrow instructions before actual delivery of the deeds.

Appellants are the four children of Catherine Quinn. Three are of legal age, and the fourth, a minor, is represented by and appears through Mrs. Quinn, his guardian. Part of the estate of the four children, each owning an undivided one-fourth interest therein, was the land here in question. Catherine Quinn, who appears to have been acting on behalf of all of the appellants, gave the respondent, Los Angeles City High School District of Los Angeles County, an exclusive option to purchase the property for the sum of $5,500 cash, taxes to be paid by the board of education of respondent, possession to be given October 17, 1922. No other terms or conditions of sale were specified in the option, which was in writing, signed by Catherine Quinn personally, as owner. She understood, so the option recites, that the sale of the property was to be handled in escrow by a company satisfactory to the board of education, and she agreed to furnish a good and sufficient grant deed, and a new, unlimited guarantee of title to the property, to be issued by a title company satisfactory to the respondent. The respondent, by formal resolution of the board of education, decided to purchase the property from Mrs. Quinn as an addition to the Polytechnic high school site, and on the terms and conditions set forth in the option. It also directed that an action in condemnation, theretofore authorized by it to acquire the property, be discontinued providing the property be purchased in accordance with the option and through ordinary channels. The secretary of the board of education thereupon notified Mrs. Quinn in writing that the board agreed to purchase the property at the price mentioned, provided a good and sufficient deed and a new, unlimited guarantee of title were furnished, showing title to the property in the Los Angeles City High School District of Los Angeles County, free and clear of encumbrances, "except the taxes for the fiscal year 1922–23."

Catherine Quinn, as guardian of the minor-appellant William Charles Quinn, thereupon filed in the superior court of Los Angeles County a return of sale of the interest of the

minor in the property to the respondent, and prayed for confirmation, which was granted by an order of the court made and entered on the seventh day of December, 1922. On the same date, Mrs. Quinn deposited with the Title Guarantee and Trust Company, a title company satisfactory to respondent, escrow instructions reading as follows:

"Escrow Instructions    Number 457343
"Los Angeles, Cal., Dec. 7th, 1922.
"Title Guarantee & Trust Company:

"I will hand you a deed executed by Catherine Quinn, guardian, also, deed, executed by Mary Elizabeth Quinn et al. to Los Angeles City High School District of Los Angeles County, on the following described property: [Describing it.]

"Subject to: 2nd half taxes 1922–23.

"Conditions, restrictions, reservations and rights of way of record    which you are authorized to deliver or use upon payment to you within 20 days from date hereof for my account, the sum of $5500.00. No insurance through escrow.

"Hold for me $43.55 as tax adjustment.

"Pay your escrow charges, also your charges for guarantee certificate.

"(Liability $5500.00).

"Affix and cancel proper revenue on each deed. Deeds to come.

"In the event that the conditions of this escrow have not been complied with at the expiration of the time provided for herein, you are instructed to complete the same at the earliest possible date thereafter, unless I have made written demand upon you for the return of all instruments deposited by me.

"Signature    Catherine Quinn,
"Address 607 West 40th Place, City.
"Phones: Auto. 298034   Sunset ——."

Following the deposit of these escrow instructions, Catherine Quinn, as guardian of William Charles Quinn, a minor, executed and placed with the escrow-holder, Title Guarantee and Trust Company, a deed of such guardian conveying the quarter interest of the minor to the respondent. She also had prepared and caused to be signed by the three adult appellants a deed conveying their three-quarters interest in the property to the same grantee. This deed she likewise

deposited with the escrow-holder.   After the deposit of these
deeds with the escrow-holder, the respondent delivered to the
Title Guarantee and Trust Company the following com-
munication:

> "Los Angeles, Cal., December 12, 1922.
> "Order No. 435264
> "Escrow No. 457343

"Title Guarantee and Trust Company
  "Fifth Street and Broadway
    "Los Angeles, California.
      "Mr. Zell Henley, Escrow Clerk.
"Gentlemen:

"Please be advised that the Board of Education has
agreed to purchase from Catherine Quinn (describing the
property), for the sum of $5,500.00; provided that a good
and sufficient deed and a new unlimited guarantee of title
are furnished showing title to said property vested in 'Los
Angeles City High School District of Los Angeles county,'
free and clear of all incumbrances except the second half
of taxes for the fiscal year 1922–23.

"The board is to pay only the fee for the recording of
the deed; all other escrow charges to be paid by the seller.

"When the deed is ready for formal acceptance by the
board, please forward it to the secretary's office, 730 Security
Building, and after being accepted by the board, it will be
sent to you for recording and final return to the secretary's
office.

"We will have prepared a warrant to cover the above-
mentioned purchase price and forward it to you for use in
this escrow.

> "Very truly yours,
> "Wm. A. Sheldon, H E G
> "Secretary, Board of Education."

A few days later, and within the time required, the re-
spondent handed to the Title Company its warrant in the
sum of $5,500, with directions to disburse the same "in ac-
cordance with our [its] previous instructions."   The Title
Company received the warrant, and deposited it in its own
account in bank.   The escrow instructions signed by Mrs.
Quinn were not shown to the respondent, and the escrow in-
structions signed by the respondent were not shown to Mrs.
Quinn.

[1]  Deeds or grants conveying real estate, or an interest therein, to a political corporation or governmental agency cannot be accepted for recordation without the consent of the grantee evidenced by its resolution of acceptance attached to such deed or grant. (Civ. Code, sec. 1158.)  Consequently, on January 6, 1923, the Title Guarantee and Trust Company sent the two deeds to the board of education of the respondent for acceptance and return to the escrow-holder. The communication accompanying these deeds contained the following:

"The seller's instructions in this escrow provide that you hold for them $43.55 as tax adjustment and further told us that this *as* on account of first half taxes having been paid by them, which according to your original agreement with them was to be assumed by you.

"If it is your intention to comply with this, you can send us funds in this amount with instructions to use said funds for the above purpose.

"Also in your letters to us include approval of liability under your Guarantee of Title not to exceed $5500.00, and that there is to be no insurance through escrow.

"As soon as the above matters have been provided for we will notify you regarding Dismissal of Action."

On January 8th, the board of education, by resolution, accepted the deeds, and certificates to that effect, attested by its secretary, were attached to the documents.  On the next day the deeds were returned to the Title Company with a direction to have the instruments recorded and returned to the secretary's office.  The letter contained this statement: "We will settle for tax with the seller outside of escrow."

On January 12th, the appellants served on the Title Company an instrument in writing canceling and annulling their escrow instructions, and vacating the authority of the Title Company to deliver the deeds, and demanded immediate return of the documents.  The deeds were never recorded, and, at the trial below, it was stipulated that they were not in the possession of the escrow-holder.

The contentions of the appellants are that they were not divested of their title in the land by the transactions noted for the reasons, first, that there was no escrow between the parties because no valid contract of purchase and sale of the property was entered into by them, and Mrs. Quinn was

not authorized in writing to do so for them, and, second, that the passing of the deeds out of escrow, for the sole purpose of having the certificates of acceptance indorsed thereon, did not amount to a delivery. **[2]** That there must be a binding contract based on a valid consideration to support an escrow, admits of no debate. (*Thomas* v. *Birch,* 178 Cal. 483, 489 [173 Pac. 1102]; *Holland* v. *McCarthy,* 173 Cal. 597, 602 [160 Pac. 1069]; 10 Cal. Jur. 581.) But it is not necessary for us to consider that phase of the case. Assuming that there was such a contract, we are satisfied that title did not pass to the respondent, for want of a proper delivery of the deeds.

**[3]** Where a deed is placed in the hands of a third person, as an escrow, with an agreement between the grantor and grantee that it shall not be delivered to the grantee until he has complied with certain conditions, the grantee does not acquire any title to the land, nor is he entitled to a delivery of the deed until he has strictly complied with the conditions. (*Dyson* v. *Bradshaw,* 23 Cal. 528, 536.) If he does not comply with the conditions when required, or refuses to comply, the escrow-holder cannot make a valid delivery of the deed to him. (*McLaughlin* v. *Clausen,* 85 Cal. 322, 327 [24 Pac. 636].) It is, therefore, necessary to determine what were the conditions precedent imposed on the respondent in this case to entitle it to delivery of the deeds. Respondent contends that there was but one, the payment by it to the escrow-holder of the sum of $5,500, for the account of appellants, within twenty days from the date of the escrow agreement; and that having received manual transmission of the deeds, title to the property passed to it.

**[4]** Appellants contend that another condition was imposed by the escrow, which was not complied with by respondent, and nonperformance of which rendered delivery of the deeds ineffective. They rely upon the direction ''hold for me $43.55 as tax adjustment,'' contained in the escrow instructions given to the Title Company by Mrs. Quinn. Read alone, the direction is ambiguous and uncertain. There is nothing in the context to explain it. It therefore becomes the duty of the court to inquire into the circumstances and conditions which existed at the time of the negotiations between Mrs. Quinn, on behalf of the appellants, and the respondent for the sale and purchase of the property, which

resulted in the deposit of the deeds with the Title Company as escrow-holder. ''This is necessary in order to bring the language in the 'escrow agreement' as near to the intention of the parties at the time of its execution as the words which they saw fit to employ and rules of law will permit. The rule is universal that it is the duty of the court, when the language used is not clear, positive and certain, to consult the conditions, situation and motives of the respective parties for the purpose of ascertaining their intention.'' (*Clarke* v. *Eureka Co. Bank,* 123 Fed. 922, 927.)

[5] By the terms of the option, and the acceptance, which resulted in the deposit of the deeds, the respondent agreed to pay the sum of $5,500 for the property, which was to be free of lien or encumbrance, except the taxes for the year 1922–23. From the record we may judge that appellants, not having been able to complete their escrow before the first Monday in December, paid the first installment of taxes for the year 1922–23, rather than suffer it to go delinquent. They were not compelled to make that payment under the terms of their contract of sale, for the transfer was to be made to respondent, subject to the whole of the tax for 1922–23. There is nothing in the record from which it may be inferred that that agreement was ever changed or modified. But, the first installment being paid by the appellants, the situation of the parties was changed from that in which it rested at the beginning of the negotiations. That both parties to the transaction were aware of the fact that the situation had changed is conclusively established by the evidence of what took place after the first installment of the tax was paid. The escrow instructions of both appellants and respondent recognized the fact. There is the direction to the Title Company in each set of instructions that the property is to be conveyed subject, only, to the second half of the taxes for 1922–23. We know of no reason why appellants, having made a payment, prior to the deposit of the deeds, which the respondent should have made, should not have demanded as a condition precedent to delivery of the deeds that respondent repay them for such advance. It is very evident that such was the motive of the appellants in inserting in the escrow instructions the direction to the escrow-holder to hold the sum of $43.55 ''as tax adjustment.'' The choice of language in the direction was not happy. It

has afforded respondent an opportunity to argue that it was impossible to carry out the direction for the reason that the Title Company could not "hold" something it did not have, or which it did not collect, and that as the escrow-holder was instructed to deliver the deeds on payment of the sum of $5,500 it could demand no further payment from respondent.

The argument is too technical. It does not take into consideration the duty of the court to go behind the wording of the escrow agreement in order to ascertain and give effect to the intention of the parties. We have shown their situation in relation to the taxes before and at the time the deeds were deposited. The manifest intention of the appellants was to secure for themselves repayment of the sum advanced for taxes which respondent should have paid. The escrow-holder fully understood what their intention was, and so informed respondent. The communication it sent to the board of education on January 6, 1923, is so plain on that point, and settles it so completely, that it does not admit of argument.

Instead of complying with the condition, which was reasonable, and with which it was fully cognizant, the respondent undertook to settle with appellants for the tax "outside of escrow." It does not appear that such course was ever agreed to by appellants, or that they have been repaid the amount. It follows, therefore, that the manual transmission of the deeds by the Title Company to the respondent for "acceptance and return to" it, must be considered as having been made only for the purpose of putting the deeds in proper shape to be recorded. Transmission for any other purpose was, at that time, beyond the scope of the power and authority of the Title Company as the escrow-holder. No other delivery appears to have been made or attempted. As a result, there was no delivery at all, no title passed, and the deeds never took effect. (10 Cal. Jur., p. 591, par. 15.)

The judgment is reversed.

Shenk, J., Richards, J., Lawlor, J., Lennon, J., Seawell, J., and Myers, C. J., concurred.