[L. A. No. 13476. In Bank.—October 2, 1934.]

W. E. GREENZWEIGHT, as Administrator, etc., Respondent, v. TITLE GUARANTEE AND TRUST COMPANY (a Corporation) et al., Appellants.

Charles I. Baker, Arch. H. Vernon, Gilbert E. Harris and Charles H. Brock for Appellants.

Joseph F. Rank and Willard W. Wallace for Respondent.

WASTE, C. J.—This is an action for declaratory relief, in which the plaintiff seeks to have canceled a trust deed reconveyance and the indorsement of payment upon the trust deed note, and also to have both instruments reinstated in full force and effect. From a judgment for plaintiff two of the defendants prosecute this appeal.

The transaction giving rise to this litigation involved the refinancing of a loan upon the dwelling of the defendant Levy. Plaintiff held the then existing encumbrance thereupon, a trust deed in which the defendant Title Guarantee and Trust Company was named as trustee. The plan was to pay off plaintiff's encumbrance with the funds derived from a new loan to be made by the defendant Fidelity Savings and Loan Association and likewise secured by a trust deed. To consummate the refinancing, an escrow was opened at the Belvedere State Bank, into which plaintiff deposited his trust deed, his trust deed note and an executed request for reconveyance by the Title Guarantee and Trust Company, all pursuant to a letter of instructions to said bank to which reference is hereinafter made. About the same time the defendant Fidelity Savings and Loan Association transmitted to said State Bank, as escrow agent, its instructions with reference to securing the new loan upon the said dwelling, and, on November 25, 1930, delivered to the escrow agent its check in the sum of $2,425.87 to be used in accordance with its instructions. The defendant Levy and his wife executed and delivered to the escrow holder a new trust deed and a trust deed note in favor of the defendant Fidelity Savings and Loan Association and also deposited therein a check for $161.98, being the excess amount required to make up the payment due the plaintiff. The Belvedere State Bank had a separate escrow department, which department carried a separate commercial checking account with the Belvedere State Bank. The checks so received were credited to the escrow account in the commercial department of the Belvedere State Bank. This bank was not a member of the Los Angeles Clearing House Association, but it maintained a commercial account with the Bank of America through which it cleared its checks. The checks above mentioned were sent to the Bank of America for clearance. They were paid and credit was given by that institution to

the Belvedere State Bank account on November 30, 1930. At about this time there was standing to the credit of Belvedere State Bank with Bank of America a deposit of over $18,000. On December 3, 1930, Belvedere State Bank delivered the reconveyance executed by plaintiff, and caused the trust deed note to be canceled and the reconveyance recorded. It also caused to be recorded a deed of trust against said dwelling in favor of the defendant Fidelity Savings and Loan Association. Thereafter it transmitted to said defendant its new trust deed note secured by the deed of trust, and on December 13, 1930, mailed to the plaintiff the check of the escrow department drawn on said department's account in the Belvedere State Bank for the amount due him under his instructions. December 13th was a Saturday. Plaintiff received the check on the evening of December 15th and deposited it with his bank for collection on the morning of December 16th. On the following day, before the check had cleared, the Belvedere State Bank was closed by order of the superintendent of banks. At the time of its closing the Belvedere State Bank had in its vaults the sum of $8,250.73. No part thereof, however, was held for plaintiff, but was subject to the use of the closed bank for its general business, including the payment of presented checks upon depositor's accounts. On the same day the Bank of America exercised its banker's lien on all the credits of the Belvedere State Bank on deposit with it.

It was plaintiff's claim at the trial that the Belvedere State Bank did not hold for him the moneys, as required by his instructions, at the time it delivered the reconveyance and canceled the note and trust deed; that therefore such delivery and cancellation were void and of no effect and that his note therefore still remained in force and he retained his first lien upon the property as against the trust deed of the defendant Fidelity Savings and Loan Association. As stated, judgment went in favor of the plaintiff and the defendants Title Guarantee and Trust Company and Fidelity Savings and Loan Association appealed.

Plaintiff presents the same argument here as he did below in support of the judgment. The argument is grounded upon the premise that plaintiff's escrow instructions did not authorize the Belvedere State Bank to hold or

accept checks in lieu of money, but, on the contrary, required that money alone was to be held. ▇ The law is well established that a delivery by an escrow agent contrary to the terms of a deposit in escrow is void and of no force or effect. (*Los Angeles High School Dist.* v. *Quinn,* 195 Cal. 377 [234 Pac. 313].) Defendants do not question this rule but contend that the escrow instructions permitted the escrow holder to accept checks for sums of money to be paid to it and that "after the check of the Fidelity Savings and Loan Association was cashed and the proceeds left with the Bank of America to the credit of Belvedere State Bank, subject to its check, the Belvedere State Bank 'held' that sum of money within the meaning of the escrow instructions of plaintiff, and the escrow holder was not required to draw out the actual coin or currency and keep it in its physical possession at all times until delivered to plaintiff".

The sole issue therefore, as agreed by the parties, is, did the Belvedere State Bank violate the terms and conditions of the escrow agreement? Plaintiff's instructions on this subject provided: "These documents you are authorized to use when you can hold for me the sum of $2,450.00, and interest on $3,218.84, from August 1st, 1930, to date money is received by me."

▇ It is a matter of common knowledge that checks and drafts are usual and ordinary means of transferring money in the transaction of business. (*California Stearns Co.* v. *Treadwell,* 82 Cal. App. 553, 559 [256 Pac. 242].) A credit given for the amount of a check by the bank upon which it is drawn is equivalent to, and will be treated as, a payment of the check. It is the same as if the money had been paid over the counter on the check, and then immediately paid back again to the account or for the use for which the credit is given. (*Utah Con. Co.* v. *Western Pac. Ry. Co.,* 174 Cal. 156, 164 [162 Pac. 631].) In other words, the giving of credit is practically the same as paying the money to the depositor and receiving the cash again on deposit.

▇ Therefore, when the check of the Fidelity Savings and Loan Association was cleared and the Bank of America deposited the proceeds thereof to the account of the escrow holder the situation for all practical purposes was the same

as though the escrow holder had actually received from the Bank of America the cash payable on the check, which would satisfy the conditions of the escrow, and then for safekeeping had redeposited the money with the Bank of America. Had the escrow holder accepted the check, cashed it, and held the money, and then delivered the instruments, there would be no question as to compliance with the instructions. The mere acceptance of the check did not violate the instructions. In our opinion the terms of the escrow instructions were fully complied with when the check of the Fidelity Savings and Loan Association was cleared and its proceeds made available to the escrow holder by the credit given therefor by the Bank of America. ▮ The escrow holder then had control or dominion over such proceeds and "held" them for plaintiff within the meaning of the instructions. From that time on, the escrow holder became the agent of the plaintiff as to such money and any impropriety in its subsequent conduct with regard thereto must be borne by plaintiff and not by the defendants. In other words, if the escrow holder violated its duty in so "redepositing" the proceeds of the check with the Bank of America, or in permitting the credit therefor to stand until such time as conditions compelled its cessation of business, it did so as the agent of the plaintiff who, as against innocent third parties, should now bear the loss. In *Shreeves* v. *Pearson*, 194 Cal. 699, 707 [230 Pac. 448], we held that "whenever a deed is deposited in escrow by the grantor to be delivered to the grantee upon payment by him to the escrow holder of a sum of money to be by the latter delivered to the grantor upon the production by the latter of a satisfactory certificate of title, the escrow holder is as to such deed and money the agent of both parties until such time as the said satisfactory certificate of title is produced, but he thereupon becomes the agent of the purchaser as to such deed and of the *seller as to such money*".

The judgment is reversed.

Curtis, J., Preston, J., Shenk, J., and Seawell, J., concurred.