[Civ. No. 16196. Second Dist., Div. One. June 17, 1948.]

L. O. WATTS et al., Respondents, v. ANNA MOHR, Appellant.

Howland & Prindle and Clayton L. Howland for Appellant.

Rowland P. Fontana for Respondents.

YORK, P. J.—This is an appeal by defendant Anna Mohr from a judgment in favor of plaintiffs decreeing specific performance of an escrow agreement.

On October 5, 1945, respondents deposited with one Harry E. Clem, a real estate broker, $250 as an initial payment and agreed to purchase certain realty owned by appellant for the sum of $7,500; payable $1,250 in cash and the balance by deed of trust and note for $6,000. Thereafter certain events occurred which are hereinafter recited in chronological order:

1945

*Oct. 8:* Written escrow instructions, containing a limitation of time of 30 days, were executed naming Liberty Escrow Company as escrow agent, whereby appellant agreed to sell and respondents agreed to purchase certain realty therein described for a total price of $7,500, $1,500 thereof to be in cash and the balance of $6,000 to be secured by a note and trust deed from respondents, payable in installments of $60 per month beginning Dec. 1, 1945, with interest at 6 per cent from Oct. 8th;

*Oct. 18:* Appellant's grant deed to respondents was de-

livered to Liberty Escrow Company and Title Insurance & Trust Company ordered to make a preliminary search of title;

*Nov. 8:* Report of Title Insurance & Trust Company dated Nov. 7, 1945, delivered to Liberty Escrow Company, after preliminary search had been made, which showed the following encumbrances outstanding against the title of the escrowed property: Taxes 1945-46; easement across the rear 5 feet for pole lines; covenants, conditions and restrictions of record; a deed of trust and a lease;

*Nov. 15:* Appellant's deed conveying the escrowed property was forwarded to Title Insurance & Trust Company, together with a deed from Beatrice Mohr to appellant;

*Nov. 26:* Liberty Escrow Company forwarded to Title Insurance & Trust Company a reconveyance of the outstanding trust deed, statement of identity of appellant, and an affidavit by appellant, with respect to the outstanding lease;

*Prior to Nov. 26:* Title Insurance & Trust Company had the deed from Mohr (appellant) to Watts (respondents) abstracted in its file for recordation, but it had not received from Watts the trust deed and note for $6,000;

*Nov. 28:* Appellant delivered to Liberty Escrow Company late in the afternoon her letter cancelling the escrow, at which time neither the deposit of $1,500 nor the trust deed and note from Watts had been received by Liberty Escrow Company;

*Nov. 28:* Respondents had a telephone conversation with the manager of Liberty Escrow Company and at 5 o'clock that afternoon they delivered their check for $1,500 to said company;

*Nov. 30:* Respondents received written notice of cancellation of the escrow;

*Thereafter,* said $1,500 check was returned to Liberty Escrow Company by the bank upon which it was drawn marked "Not Sufficient funds";

*Dec. 20:* Said check was redeposited;

*Around Dec. 25:* Respondents received from appellant a cashier's check for $250, which they declined to accept and returned it to her by registered mail.

*Dec. 13:* Instant action was filed.

The escrow instructions signed by respondents and addressed to Liberty Escrow Company, recite as follows: "I will hand you $1250—I have paid $250.00 outside of escrow to seller—and will deliver to you any instruments which this

escrow requires shall be executed by me, all of which you are instructed to use, provided that on or before Nov. 8th, 1945, you hold a policy of title insurance with the usual Title Company's exceptions, with a liability of not less than $7500.00 covering Lots 18, 19 and 20 in Block 4 of Tract 6460, City of and County of Los Angeles, State of California, showing title vested in L. J. Watts, a married man, L. O. Watts, a married man, free of encumbrances, except all General and Special taxes, including all levies therein for fiscal year 1945-46. . . . Conditions, restrictions, reservations, easements and right of way of record and in deed to file (if any) affecting the use and occupation of said property.

"Trust Deed—executed by vestees to Liberty Escrow Company, a corporation, Trustee, to secure one note for $6000.00, dated Oct. 8th, 1945, Principal and interest payable in installments of $60.00 or more on the 1st day of each month commencing Dec. 1st, 1945, including interest at six per cent per annum from date hereof, . . . payable monthly in favor of Anna Mohr.

"Buyers agree to accept property in its present condition. Prorate taxes to date of recording Deed. . . . If above encumbrance is part of purchase price endorse interest on note paid to date of recording deed. . . . Party electing to cancel this escrow promises and agrees to pay your cancellation expenses. I/we agree to pay my respective charges.

"In the event conditions of this escrow have not been complied with at the expiration of the time provided for herein, you are instructed to complete the same at the earliest date possible thereafter unless we or either of us shall have made written demand upon you for the return of the money or instruments deposited by either of us; in which case you are instructed to return all instruments and/or cash to the respective parties hereto and this escrow will without further notice be considered as terminated. . . ."

Appellant Anna Mohr signed the following approval which appears on the same page with the foregoing instructions:

"All conditions and demands above are hereby approved and I will hand you the necessary documents called for on my part to cause title to be shown as above, which you are authorized to deliver upon payment to you for my account the sum of $1250.00 and herein described Trust Deed within the time as above provided. .Pay your escrow charges and my proper recording fee, also charges for evidence of title

called for above (whether or not this escrow is consummated), except the buyer's fee, and you are hereby authorized to pay any bonds, assessments and/or taxes and any encumbrances of record to show title as called for, or necessary to comply with same. Pay Harry E. Clem, as commission, the sum of $375.00.''

As heretofore stated, appellant's deed to the property here in question was in the hands of the escrow company on October 18, 1945. Appellant testified that after the title company's report was received by the escrow company and previous to November 15th, she executed a reconveyance of a trust deed, and that at a slightly later date, she made an affidavit with respect to the lease of record which was shown in the title company's search. She also testified that her son had formerly owned the property and she was unaware that the lease had been recorded, because the tenants had stayed but a few months.

Mr. P. J. Horsch, an officer of the Title Insurance & Trust Company, testified that on November 13, 1945, his company received from Liberty Escrow Company two grants deeds, i. e., (1) Mohr to Mohr and (2) Mohr to Watts, with instructions ''Please abstract and hold for further filing instructions''; that on November 26, 1945, certain other papers were received from the escrow company, to wit: a reconveyance, a statement of identity of Anna Mohr and an affidavit by her with respect to the lease of record; that these documents were requested by his company before it could issue a certificate of title; that in the handling of these escrow orders, the title company receives from the escrow company what are known as final instructions, filing instructions, as to how to issue its policy; that it is necessary for the title company to have the documents referred to in the escrow agreement in order that its policy of title insurance when issued in the names of the buyers, as required by the escrow agreement, shall reflect the true condition of the title to the property being conveyed; further, that his company would be in no position to record these documents until it had received final instructions from the escrow company.

That the trial court construed the escrow agreement as requiring the escrow company to have possession of a policy of title insurance before it was necessary for the respondents to deposit the $1,500 and the trust deed and note for $6,000, is evidenced by certain of its findings of fact to the following

effect: that the deposit of the money and the delivery of the instruments into escrow "were dependent upon, or were to coincide with the deposit by the defendant, Anna Mohr, of certain instruments . . . and the delivery to . . . Liberty Escrow Company of a policy of title insurance"; that respondents were not required to deposit the cash or the trust deed until appellant "had performed or was ready, able and willing to perform the terms, covenants and conditions of the escrow instructions on her part required to be done and performed, and had delivered into said escrow a policy of title insurance."

The evidence in this case clearly establishes the fact that before the Title Insurance & Trust Company could issue its policy of title insurance, in the form required by the escrow agreement, it was necessary that the trust deed and note be in its possession awaiting final instructions from the Liberty Escrow Company.

The escrow agreement recites: "I will hand you $1250.00 . . . and will deliver to you any instruments which this escrow requires shall be executed by me, *all of which you are instructed to use*, provided that on or before Nov. 8th, 1945, you hold a policy of title insurance . . . showing title vested in (respondents) free of encumbrances except" (1) taxes, (2) conditions, etc., of record, (3) trust deed for $6,000.

This instruction can only mean that when all necessary documents are in the hands of the title company, it issues its policy of title insurance in accordance with the escrow instructions, transmits it to the escrow company, and upon final instructions from the latter places the documents of record in the county recorder's office.

It was also found by the court that the lots here in question "were still subject to a cloud of record on the said 28th day of November and that said plaintiffs had on the said 28th day of November, 1945, performed and done all things on their part to be done or performed."

This finding is not supported by the evidence. To the contrary the evidence clearly establishes that respondents have never executed the note and trust deed required of them, and also that it was not until after appellant served her notice of cancellation of the escrow upon the escrow holder that the respondents delivered their check for $1,500, which was later returned to the escrow holder marked "Not suf-

ficient funds.'' The conduct of respondents throughout this transaction shows a complete lack of good faith.

On the other hand, the evidence clearly shows that appellant had completely performed her part of the agreement and that the so-called clouds, i. e., an old trust deed and a lease, had been removed from the title when she procured a reconveyance of the trust deed and made an affidavit regarding the lease.

It is aptly stated in 19 American Jurisprudence, page 438, section 20: ''In the law governing performance of escrow agreements, there is no doctrine of substantial compliance to be found. Compliance must be full and to the letter, or else it constitutes merely noncompliance. Strict and full performance only can discharge a condition precedent to a valid delivery by the escrow holder. The question involved is one of performance of the escrow agreement, and not of the ability of the parties to perform the agreement, since such ability, without full performance, cannot amount to compliance. Accordingly, it has been held that the ability of a party to an escrow agreement to pay in cash the amount of cash payment called for by the agreement is immaterial, where such party simply deposits his check instead of the cash, so far as the right of the depositary to thereupon deliver the deed is concerned, since such ability without full performance cannot amount to a compliance.''

''It is one of the cardinal principles of law applicable to escrows that the terms and conditions of their fulfillment must be strictly performed.'' (*Shreeves* v. *Pearson,* 194 Cal. 699, 711 [230 P. 448].) It is undisputed in the instant case that respondents never complied with the terms of the escrow instructions.

With respect to specific performance of an obligation, section 3392 of the Civil Code reads: ''Specific performance cannot be enforced in favor of a party who has not fully and fairly performed all the conditions precedent on his part to the obligation of the other party, except where his failure to perform is only partial, and either entirely immaterial, or capable of being fully compensated, in which case specific performance may be compelled upon full compensation being made for the default.''

In the circumstances presented herein, specific performance cannot be enforced, because when respondents neglected to perform the conditions precedent required of them by the

escrow agreement, i. e., the execution and delivery to the escrow holder of their note for $6,000 and the trust deed securing same, they thereby made it impossible for appellant to procure a policy of title insurance showing title to the property being conveyed by her vested in respondents subject to such trust deed.

For the reasons stated, the judgment is reversed.

Doran, J., and White, J., concurred.