[Civ. No. 21653. Second Dist., Div. Two. Oct. 24, 1956.]

MILA D. TODD, as Executrix, etc., Respondent, v. ELDRED L. VESTERMARK et al., Appellants.

[Civ. No. 21654. Second Dist., Div. Two. Oct. 24, 1956.]

JAMES R. BURNETT et al., Respondents, v. ELDRED L. VESTERMARK et al., Appellants.

Roy J. Brown for Appellants.

James J. Baker, Alfred D. Williams, Denio, Hart, Taubman & Simpson and Roger W. Young for Respondents.

ASHBURN, J.—An insolvent escrow holder embezzled moneys deposited with it as soon as they were received. Who must stand the loss—vendor, vendee, holder of trust deed upon the subject land?

On August 25, 1954, plaintiffs James R. Burnett and wife entered into an escrow with defendants Eldred L. Vestermark and wife, depositing with Broadway Escrow of Long Beach (hereinafter referred to as Broadway) instructions appropriate to consummating a sale by the Burnetts to the Vestermarks of certain property owned by the Burnetts and situated on Pomona Street in the city of Long Beach. The property was subject to the lien of a trust deed held by Mila D. Todd, as executrix of the estate of Newton M. Todd,

deceased. She deposited in escrow a demand for the amount necessary to pay her note in full. The escrow holder could not write title insurance and it was contemplated that the closing of escrow would be handled through Title Insurance and Trust Company of Los Angeles so that a policy of title insurance could be obtained for the protection of the buyer. In order to finance the deal the Vestermarks borrowed $7,500 from Beneficial Standard Life Insurance Company, and to that end established a separate escrow with Broadway; it also contemplated closing through Title Insurance and Trust Company. The instructions provided that the money from this loan was to be used in the Burnett escrow.

On September 21, 1954, Broadway requested Title Insurance to file and record all papers then in hand. This request was carried out on September 22, 1954. The title company, having previously received from Beneficial Standard Life Insurance Company the proceeds of its loan to the Vestermarks, transmitted the net amount of $6,421.71 to Broadway, which received the title company check that same day, September 22d. The check was deposited in a Long Beach bank on the 23d to the credit of Broadway and the proceeds immediately embezzled by its president. The evidence shows that the bank balance in its trustee account was $1.98 on September 20th. Its business was closed by action of the corporation commissioner on October 8th.

At the time of recordation of the documents by the title company on September 22d, it did not have in hand any request for reconveyance of the Todd trust deed; it had been requested by Broadway to file the papers and "hold for reconveyance to come." Pursuant thereto it recorded all papers on the 22d, although it obviously could not clear title at that time because of the continued existence of the Todd lien. It accepted the business risk involved and at some time after September 23d issued a policy of title insurance dated September 22, 1954, showing property vested as of that date in the Vestermarks free of the Todd lien. Actually it did not receive Mrs. Todd's request for reconveyance until September 30th, and the document was not recorded until October 4th.

The Burnetts brought an action against the Vestermarks in the familiar form of quiet title. Mrs. Todd brought an action against the Burnetts and the Vestermarks to have it adjudged that the property is subject to the lien of her first trust deed, that it be foreclosed, and other appropriate relief

granted. The trial court entered judgment quieting the Burnett title against the Vestermarks, and another judgment granting the prayer of Mrs. Todd and ordering her trust deed foreclosed. Appeal having been taken from each judgment, the cases are presented here on a single set of briefs.

In order to determine whose money was embezzled by Broadway on September 23, 1954, a careful scrutiny of the escrow instructions is required, and it must be made in the light of certain settled legal principles. ■ It is established in this state that the terms and conditions of an escrow must be strictly performed. (*Shreeves* v. *Pearson*, 194 Cal. 699, 711 [230 P. 448] ; *Los Angeles City High School Dist* v. *Quinn*, 195 Cal. 377, 383 [234 P. 313] ; *McCarthy & Myer* v. *Bank of Italy*, 68 Cal.App. 166, 170 [228 P. 724] ; *Watts* v. *Mohr*, 86 Cal.App.2d 256, 262 [194 P.2d 758].) ■ The doctrine of substantial performance does not apply. (*Watts* v. *Mohr*, *supra*, at 262; 19 Am.Jur. § 20, p. 438.) ■ The escrow holder is agent for both parties at all times prior to performance of the conditions of the escrow, but when that event transpires ". . . the nature of this dual agency changes to an agency not for both, but for each of the parties to said transaction in respect to those things placed in escrow to which each has thus become completely entitled." (*Shreeves* v. *Pearson, supra,* 194 Cal. 699, 707 ; see also, *Greenzweight* v. *Title Guar. & Trust Co.,* 1 Cal.2d 577, 582 [36 P.2d 186].) ■ When the conditions have been fully performed, title passes *eo instanti* and recordation of documents operates to evidence the passing of title previously accomplished. (18 Cal.Jur.2d § 24, p. 341, § 14, p. 325; *Holman* v. *Toten*, 54 Cal. App.2d 309, 313-314 [128 P.2d 808].) ■ On the other hand, a delivery or recordation by or on behalf of the escrow holder prior to full performance of the terms of the escrow is a nullity. No title passes. (*Hildebrand* v. *Beck,* 196 Cal. 141, 147 [236 P. 301, 39 A.L.R. 1076] ; *Greenzweight* v. *Title Guar. & Trust Co., supra,* 1 Cal.2d 577, 581; *Drinkwater* v. *Hollar,* 6 Cal.App. 117, 121 [91 P. 664] ; see also 30 C.J.S. § 11, p. 1211.) ■ If the escrow holder embezzles funds deposited in the escrow and does so before the moment for closing arrives, the loss must be borne by him who deposited it, because it is still his money. (*Hildebrand* v. *Beck, supra,* at p. 146; 18 Cal.Jur.2d § 18, p. 331.)

■ The instant instructions of the Burnetts and Vestermarks are on a single printed form, buyers and sellers signing separately but apparently having done so contemporaneously.

"These instructions having been signed on the same day and as a part of the same transaction are to be read and considered together. When so read and considered, if they contain all of the necessary constituent elements to make a contract they are to be regarded as a contract in writing between the parties." (*Neher* v. *Kauffman,* 197 Cal. 674, 683 [242 P. 713] ; to the same effect are *Thoroman* v. *David,* 199 Cal. 386, 390 [249 P. 513] ; 18 Cal.Jur.2d § 29, p. 354.)

The buyers instructions of the Vestermarks say that they will hand Broadway the sum of $6,000, together with necessary notes and other instruments, "which you are authorized and instructed to use and deliver provided instruments have been filed for record entitling you to procure assurance of title in the form of a Joint Protection Policy of Title Insurance issued by Title Insurance and Trust Company, Los Angeles, California, in its usual form," showing title vested in the buyers subject to a trust deed in the sum of $1,300 to be made by them as a part of the purchase price. The instructions of the Burnetts as sellers say: "The foregoing instructions and conditions are hereby approved and accepted in their entirety and concurred in by me." They agree to supply any funds, notes and other instruments necessary to carry out their end of the instructions, "which you are authorized to use and deliver provided you hold for my account any instruments accruing to me and the sum of $6,000.00." Also, "Recordation of any instruments delivered through this escrow, if necessary or proper in the issuance of the policies of title insurance called for, is authorized, and in connection therewith funds and/or instruments received in this escrow may be delivered to or deposited with the Title Insurance and Trust Company or the Land Title Insurance Company, for the purpose of complying with the terms and conditions of these escrow instructions.

"You are also authorized to open a sub-escrow with the Title Insurance and Trust Company or the Land Title Insurance Company for deposit of the funds accruing in this escrow from a loan or loan which proceeds are to be used toward the financing of this property. . . . Pay demand for release of encumbrance, now of record."

The trial judge expressed the opinion that Broadway did not hold any funds for the sellers at the time the escrow was closed because the title company check which it received on the 22d was not cashed until the 23d. We do not share this view. The instructions recognize and effectuate a matter

of common knowledge, namely, that in this community where policies of title insurance are almost universally demanded by the buyer, the escrow agent which cannot write such insurance must actually close through a title insurance company so that title may be brought down and escrowed instruments recorded simultaneously, or substantially so. Specific recognition of this fact appears in the quoted paragraph concerning the opening of a sub-escrow with Title Insurance and Trust Company. The money which was loaned to the buyers by Beneficial Standard Life Insurance Company was handled in this manner, being paid to Title Insurance and Trust Company. It was the subagent of Broadway for that purpose, and when it, the Title Company, received the money Broadway, in contemplation of law, had it in hand. This occurred before the documents were recorded or the sale escrow otherwise closed. The fact that this sum of $6,421.71 was not transferred from the loan escrow to the sale escrow on the books of Broadway, the embezzler, is immaterial. If the fact that the check was not cashed before recordation were the only defect in the closing of the escrow, it would have to be held that Broadway, as escrow holder, had in hand money belonging to the sellers and that they had become entitled to it through performance of all the terms of the escrow, but the status of the Todd lien gave the situation a substantially different complexion.

The buyers' instructions authorize the escrow holder to use and deliver cash, notes and other instruments, ''provided instruments have been filed for record entitling you to procure assurance of title in the form of a Joint Protection Policy of Title Insurance.'' This does not say, and cannot fairly be construed to mean, that the escrow holder can accept the personal assurance and liability of Title Insurance and Trust Company that the title is in shape for the writing of a policy. The buyer must be ''entitled'' to procure the same, and that right must be based upon instruments filed for record which would *per se* entitle the buyer to a policy of insurance. This event had not occurred. The authorities above cited forbid substitution of the title company's assurance that title is or will be good when the evidence shows that that was not so at the time of the closing. The buyer had exacted good title which must exist at the moment of closing. It did not exist and therefore the closing was premature, title did not pass to him though the deed and other

instruments had been recorded, and the money was still his money when embezzled by Broadway.

The sellers' instructions provide that their money and instruments may be used and delivered "provided you hold for my account any instruments accruing to me and the sum of $6,000.00." The closing of the escrow being premature, Broadway did not then hold any instruments accruing to the sellers, nor did it hold the sum of $6,000 for them. (*Hildebrand* v. *Beck, supra,* 196 Cal. 141, 145.) No question of waiver is here presented, for no opportunity for a waiver was afforded to either party. The closing was wrongful and the money which was embezzled belonged to the buyers, Vestermark.

What about Mrs. Todd's trust deed lien? She was not a party to the escrow. Upon request from Broadway to submit a demand and pertinent papers looking toward payment of that loan, Mrs. Todd's attorneys on September 20th forwarded to Broadway the note, trust deed and a request for reconveyance, concluding their letter of transmittal as follows: "You are authorized to use these instruments when you can deliver to us the sum of $1391.13 plus interest at 6% from July 10, 1954." As above shown, the money in the escrow at the time of actual closing was that of the Vestermarks and there was no authority to pay it to Mrs. Todd, for the moment of proper closing of the escrow had not arrived. That money could not be paid to Mrs. Todd until it became payable to the sellers, Burnett, who were using it to clear their title. The Burnett instructions to "Pay demand for release of encumbrance" could not be carried out, for the money did not belong to the Burnetts. Hence, the escrow company was not in position to deliver to Mrs. Todd the sum she demanded, and the recordation of her request for reconveyance was improper and ineffective.

By its judgments the trial court quieted title of the Burnetts against all claims of the Vestermarks, determined that the Todd trust deed continues as a valid lien on the property and ordered it foreclosed. No complaint is made as to the form of either judgment.

Both judgments are affirmed

Moore, P. J., and Fox, J., concurred.

Petitions for a rehearing were denied November 19, 1956.