SAN DIEGO WHOLESALE CREDIT
MEN'S ASSOCIATION, Appellant,

v.

Ralph E. GARNER, Trustee in Bankruptcy of the Estate of William P. Hume and Gwen D. Hume, Appellee.

No. 18696.

United States Court of Appeals
Ninth Circuit.

Dec. 31, 1963.

Curran, Golden, McDevitt & Martin, and O'Neill P. Martin, San Diego, Cal., for appellant.

Crittenden, Gibbs & Heid, and Harry W. Heid, San Diego, Cal., for appellee.

Before BARNES and JERTBERG, Circuit Judges, and JAMESON, District Judge.

JERTBERG, Circuit Judge.

Before us is a timely appeal from an order entered by the District Court affirming an order of the Referee in Bankruptcy whereby appellant was ordered to pay over and deliver to appellee, as trustee in bankruptcy of the estates of William P. Hume and Gwen D. Hume, his wife, the sum of $22,659.93, and to account for all property of bankrupt Hume in its hands as an assignee for benefit of creditors. The trustee's petition for such an order invoked the referee's jurisdiction under Section 2 sub. a(21) of the Bankruptcy Act (11 U.S.C. § 11).

The District Court's jurisdiction to review the referee's order is under 11 U.S.C. § 67. This court has jurisdiction to review the District Court's order under 11 U.S.C. § 47.

The material facts are not in dispute and may be summarized as follows:

Prior to May 23, 1960, Gordon's Markets, Inc., a corporation (hereinafter referred to as Seller) owned and operated a certain grocery market located in San Diego, California.

On May 23, 1960, Seller and the bankrupt, William P. Hume, (hereinafter referred to as Bankrupt) entered into an escrow agreement whereby Seller agreed to sell and Bankrupt to buy said business.

By the terms of the escrow instructions:

1. Seller was to deposit in escrow a bill of sale covering the business, good will, fixtures, equipment, *stock* and lease of the business.

2. Bankrupt was to deposit $1,000.00 in escrow by May 24, 1960, and an additional $8,000.00 before close of escrow, and to assume a balance of $9,000.00 due The First National Bank, making the total consideration $18,000.00, plus the agreed upon value of the stock in trade, an inventory of which was to be handed into escrow approved by both Seller and Bankrupt and which was to be paid for "into escrow".

3. Seller was to assign the lease of the premises to Bankrupt and to obtain the consent of the Lessor to the assignment.

4. Possession of the business was to be given to Bankrupt on May 23, 1960, and interest on the indebtedness, taxes, rents and insurance premiums were to be prorated to that date.

5. If the conditions of the escrow had not been complied with within 60 days, either party was entitled to demand the return of the money and documents deposited by him.

Pursuant to the terms of the escrow:

1. A bill of sale of the assets to be sold, including the stock in trade, was executed by Seller and deposited with the escrow holder.

2. An inventory of the stock in trade was taken as of May 22, 1960, showing the same to be of a value of $33,368.11.

3. Bankrupt deposited $2,298.00 of the $9,000.00 agreed to be deposited with the escrow holder.

4. Seller executed an assignment of the lease which was mailed to the Lessor for his consent.

5. Bankrupt took possession of the business on May 23, 1960, and made two payments of principal and interest on the contract with The First National Bank.

However, Bankrupt never deposited the balance of the $9,000.00 he had agreed to deposit nor did he pay into escrow the purchase price of the stock in trade, and Seller never obtained the consent of the Lessor to the assignment of the lease. The bill of sale which had been deposited in escrow by Seller was never delivered by the escrow holder to Bankrupt, nor were any of the funds deposited by Bankrupt delivered to Seller.

Bankrupt operated the business until August 30, 1960, when he executed an assignment for the benefit of creditors to appellant San Diego Wholesale Credit Men's Association. On the following day Seller likewise executed an assignment for the benefit of its creditors to appellant. The assignee operated the business for two days deriving from such operation $978.14 and then sold the stock in trade which was inventoried at $33,091.02 to one Leo Short for $21,618.79, which sum it now holds under the claim that such funds belong to it as assignee for the benefit of creditors of Gordon's Markets, Inc.

Bankrupt was adjudicated a bankrupt on October 17, 1960, and appellee was appointed his Trustee in Bankruptcy.

The Trustee then filed a petition to require appellant as assignee for the benefit of the creditors of both parties to the contract to deliver the proceeds of sale of the stock in trade to him and to render an accounting. An answer was filed by the Association claiming ownership of the funds on behalf of Seller.

On the basis of such facts, the referee concluded that title to the stock in trade had passed from Seller to Bankrupt on May 23, 1960, and ordered the assignee to deliver to the Trustee the proceeds of sale of the stock in trade. On petition for review, the District Court affirmed the referee's order.

 While appellant specifies several errors of the referee, they are peripheral to the basic issue of whether title to the stock in trade passed to the bankrupt when he took possession of the same. If title passed from Seller to Bankrupt, the order appealed from must be affirmed. If title did not pass from Seller, the order appealed from must be reversed.

The material facts above set forth were presented to the referee by stipulation. They are uncontradicted and undisputed. Appellee does not contend that the "clearly erroneous" rule set forth in General Order 47 [11 U.S.C. § 53], is applicable to this appeal. The issue before us is solely a question of law and may be stated as follows: Did the District Court err in affirming the legal conclusion of the referee that title to the stock in trade in question passed to the Bankrupt on May 23, 1960 when he took possession thereof?

The parties are in agreement that since there is no controlling provision in the Bankruptcy Act, the law of the State of California governs in determining whether title to the stock in trade passed to the Bankrupt or remained in the Seller.

No decision of the reviewing courts of California has been called to our attention, nor has our own research revealed one, which has had occasion to consider when title to the stock in trade of a retail merchant passes from the Seller to the Buyer under facts similar to the stipulated facts in this case.

In a recent decision of the Supreme Court of California, Love v. White, 56 Cal.2d 192, 14 Cal.Rptr. 442, 363 P.2d 482 (1961), the Court determined the time of passage of title from Seller to Buyer on species of personal property other than stock in trade, under facts strikingly similar to the facts in the instant case. The facts before the court, as set forth in the opinion, are:

"On December 2, 1958, plaintiff, as the seller, and defendant, as the buyer, entered into a written contract for the sale and purchase of a business known as Carol's Cafe, including the stock in trade, fixtures, equipment, good will, and a lease held by plaintiff which would entitle defendant to possession of the premises for approximately five years, for a total price of $7,000.

"The contract, in the form of an escrow agreement, provided among other things, that defendant would deliver to the escrow holder $3,000 cash, execute a conditional sales contract for $4,000 in favor of plaintiff, payable $100 per month, buy the inventory outside of escrow when he took possession of the premises, and make immediate application for all licenses necessary for the operation of the business; that plaintiff would accept the conditional sales contract as part of the purchase price, deliver a lease of the premises of approximately three years' duration, with a two-year option to renew, payable at a rental of $100 per month, and deliver to the escrow holder various instruments, including a bill of sale covering the stock in trade, fixtures, equipment and good will of the business; and that (1) possession was to be granted to defendant outside of escrow when agreed upon between plaintiff and defendant, (2) plaintiff warranted the premises would pass all inspections necessary for the operation of the business, and (3) if

plaintiff, for any reason, refused or was unable to deliver the property to defendant as agreed in the instrument, she would refund to defendant all moneys deposited by him in escrow.

"The agreement was executed December 2, 1958. Several days thereafter defendant deposited $1,500 in escrow; he did not take possession of the premises until January 20, 1959, but immediately made application for a beer license. On January 20, 1959, defendant took possession, paid outside of escrow directly to plaintiff the sum of $372.92 for stock on hand, and discovered certain defects in the equipment and the premises, which defects he caused to be repaired prior to obtaining a city license. For these repairs he paid the sum of $171.48.

"On May 12, 1959, the escrow holder notified the parties that the escrow was ready to close. On May 25, 1959, plaintiff and defendant, meeting at the escrow office, were unable to agree concerning payment for the repairs. A dispute arose. Thereafter, plaintiff went to the bar to collect the May payment of $100 due under the conditional sales contract. After defendant paid the $100, plaintiff told him she was going to see her attorney if he did not pay the remaining $1,500 in escrow, waive any claim against her for the repairs, and permit the escrow to close.

"The next day, May 26, defendant received a letter from plaintiff's attorney demanding immediate possession of the premises. The following day, May 27, plaintiff filed the present action, mainly in claim and delivery; and pursuant to a writ of possession the marshal took possession of the premises."

Under such facts two questions were presented to the court, as follows:

"First. *Did the trial court err in awarding judgment to defendant on his counterclaim for $1,500, the amount deposited in the escrow?*

"*Yes.* [1] In this state the terms and conditions of an escrow must be performed. The doctrine of substantial performance does not apply, and no title passes prior to full performance of the terms of the escrow agreement. (Hildebrand v. Beck, 196 Cal. 141, 145 [1] et seq., 236 P. 301, 39 A.L.R. 1076, Todd v. Vestermark, 145 Cal.App.2d 374, 377 [1] et seq., 302 P.2d 347.)

"[2] Applying the foregoing rule to the facts of the present case, it is clear that the title to the $1,500 which defendant had placed in escrow never passed to plaintiff, and therefore defendant could recover it from the escrow holder and was not entitled to a judgment against plaintiff for this amount.

"There is nothing in the record to show that the $1,500 is not now in the escrow. Therefore, we need not consider the situation which would exist if the money had in fact been taken out of escrow with defendant's consent.

"[3] Second. *Did the trial court err in allowing defendant on his counterclaim the sum of $397.25 upon the theory that plaintiff had wrongfully converted fixtures and equipment of the beer tavern consisting of a bar, back bar, shuffleboard, cocktail sink, tap beer box, beer bottle box, stools, and miscellaneous items of personal property belonging to defendant?*

"*Yes.* Under the terms of the escrow agreement the fixtures and equipment of Carol's bar and restaurant were part of the assets defendant agreed to purchase through escrow under a conditional sales contract. Title thereto would pass to defendant neither under the agreement nor under the law relating to the passing of title in escrow transactions until all the conditions of the escrow had been performed and

the escrow closed. (Todd v. Vestermark, supra, 145 Cal.App.2d 374, 377 [5] et seq., 302 P.2d 347; cf. Helperin v. Guzzardi, 108 Cal.App.2d 125, 128 [2] et seq., 238 P.2d 141.) Since such contingency did not occur, defendant never acquired ownership of the property."

We note that the "Escrow Law" of the State of California [Financial Code § 17003], makes no distinction between stock in trade of a retail merchant, and other species of personal property. Such section is as follows:

"§ 17003. *Escrow.* 'Escrow' means any transaction wherein one person, for the purpose of effecting the sale, transfer, encumbering, or leasing of real or personal property to another person, delivers any written instrument, money, evidence of title to real or personal property, or other thing of value to a third person to be held by such third person until the happening of a specified event or the performance of a prescribed condition, when it is then to be delivered by such third person to a grantee, grantor, promisee, promisor, obligee, obligor, bailee, bailor, or any agent or employee of any of the latter."

As noted in Love v. White, supra, the terms and conditions of an escrow must be performed and no title passes prior to full performance of the terms of the escrow agreement.

Section 1738 of the Civil Code of the State of California provides:

"§ 1738. *Property in specified goods passes when parties so intend*

"PROPERTY IN SPECIFIC GOODS PASSES WHEN PARTIES SO INTEND. (1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usage of trade and the circumstances of the case."

The Code section makes no distinction between stock in trade and other species of personal property. The clear intent of the parties that title to all of the property described in the escrow agreement was to remain in the Seller until such property was paid for is manifested by the placing of the entire transaction in escrow, including a bill of sale to be delivered upon performance of the terms of the escrow. No authority has been cited indicating that the terms of such an arrangement are not valid as between the parties. The rights of third parties are not involved in this case. A trustee in bankruptcy acquires no better title than the bankrupt himself had. If the bankrupt had no title or interest in property, the trustee acquires none. See United States v. Sampsell, 153 F.2d 731 (9th Cir. 1946).

In light of the law of the State of California, and particularly Love v. White, supra, it is our opinion that if the Supreme Court of California should have occasion to pass upon the question presented to us, it would hold under the stipulated facts that title to the stock in trade did not pass to the Bankrupt but remained in the Seller. We see no inequity in permitting the Seller or its assignee to retain possession of the proceeds from the sale of property which the Bankrupt had never paid for and title to which had been retained in the Seller until full performance of the terms of the escrow agreement.

The District Court erred in affirming the erroneous conclusion of the referee that title to the stock in trade passed to the Bankrupt when he took possession of the same.

The order of the District Court is reversed and the cause is remanded for appropriate proceedings consistent with the views herein expressed.