**In re CREATIVE DATA FORMS, INC. Debtor.**

**CREATIVE DATA FORMS, INC., Plaintiff,**

v.

**PENNSYLVANIA MINORITY BUSINESS DEVELOPMENT AUTHORITY, Defendant.**

**Bankruptcy No. 84–01514K.
Adv. No. 84–0615K.**

United States Bankruptcy Court, E.D. Pennsylvania.

July 31, 1984.

J. Scott Victor, Philadelphia, Pa., for plaintiff/debtor.

Paul J. Winterhalter, Deputy Atty. Gen., Com. of Pa., Philadelphia, Pa., for defendant.

OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge.

This case comes before the Court on a complaint for turnover of property of the estate filed by the debtor pursuant to

Bankruptcy Code section 542, 11 U.S.C. § 542. The debtor seeks an Order directing the defendant to release funds currently being held in an escrow account at Girard Bank. The defendant has answered, claiming that the debtor breached the contract under which it was entitled to receive the escrowed funds and that consequently, the debtor never had any ownership in them.

Trial on the complaint was held on June 5, 1984 by consent of the parties. For the reasons stated herein, we will enter the attached Order finding that the funds are not property of the estate and not subject to turnover.

The material facts are not in dispute.[1] The Pennsylvania Minority Business Development Authority ("PMBDA") is a state instrumentality providing financial and other assistance to eligible minority businesses in the Commonwealth of Pennsylvania. The debtor, Creative Data Forms, Inc., is a minority business engaged in the commercial printing brokerage business.

In July 1983, the debtor applied to PMBDA for a business loan. A loan in the amount of $100,000.00 was approved subject to certain terms and conditions. Essentially, PMBDA agreed to provide the debtor with up to $100,000.00 in financing contingent upon the use of the funds in a manner prescribed by PMBDA.

On February 8, 1984, the parties executed formal loan documents including (1) a loan agreement signed by PMBDA and Crawford A. Wilson, Jr., President of the debtor, on behalf of the debtor and individually; and (2) an escrow agreement signed by Mr. Wilson individually and on behalf of the debtor, and by Girard Bank and PMBDA. A check in the amount of $100,000.00 was issued to the order of Creative Data Forms, Inc., and Crawford A. Wilson, Jr.

Pursuant to the terms of the loan agreement, the debtor and Mr. Wilson were required to deposit the funds in an escrow account at Girard Bank with the Bank acting as escrow agent. The loan agreement sets forth the purpose of the loan and the conditions under which the funds would be released on an intermittent basis to the debtor from the escrow account:

"Borrower agrees that the Loan shall be used solely to provide financing for the project described in Schedule A hereto ("Project"), and the proceeds shall be used in accordance with the proposal set forth in Schedule A. The Loan shall be disbursed through an escrow account to be established with GIRARD BANK and moneys therefrom shall be released only upon presentation of certificates, invoices or other evidence of proper expenditure satisfactory to the PMBDA. The allocation of proceeds shall not be altered without prior written approval of Lender."[2]

The allocation of the loan proceeds to the debtor's business was described in Schedule A of the loan agreement as follows:

| Lands & Buildings | $ – 0 – |
|---|---|
| Leasehold Improvement | 13,350 |
| Equipment-Machinery | 36,650 |
| Vehicle | 15,000 |
| Working Capital | 35,000 |
| Total | $100,000 |

By the terms of the escrow agreement, the Bank was precluded from disbursing any funds to the debtor without prior approval from PMBDA. PMBDA was to maintain control over the funds at all times and had the right to halt payments, prohibit withdrawals or have the entire balance in the account returned to it at any time. The pertinent language in the escrow agreement reads as follows:

"Borrower agrees that the proceeds of this loan from the Authority shall be deposited with Bank, in escrow, under the terms and conditions provided herein … Bank shall obtain the written consent of the Pennsylvania Minority Business Development Authority prior to dis-

---

**1.** This Opinion constitutes the findings of fact and conclusions of law required by Rule 7052 of the Rules of Bankruptcy Procedure.

**2.** *See* defendant's Exhibit No. 1, loan agreement, paragraph 2 of Background.

bursement of any amounts from the escrow account and shall disburse the balance therein in accordance with the instructions of the Authority ... Bank agrees that the Executive Director of the Authority may, at any time and in his sole discretion, direct and authorize the Bank to prohibit withdrawals, stop payment or take such other action, including the return of the balance in the account to the Authority, as the Executive Director of the Authority shall deem appropriate to protect or safeguard any and all funds of the Authority held by the Bank pursuant to this Agreement."[3]

The repayment schedule under the loan agreement required the debtor to pay the sum of $437.50 to PMBDA for six (6) consecutive months, commencing on April 1, 1984 and due the first day of each month thereafter, and the sum of $1,115.94 to PMBDA in 114 consecutive monthly installments, commencing on October 1, 1984, and due on the first day of each month thereafter. The debtor, however, failed to make the April or May payments due under the above described repayment schedule and has failed to make any payments since the bankruptcy petition was filed. Therefore, the debtor is in default under the loan agreement.

Between February 8, 1984 and May 9, 1984, funds totaling $46,534.76 were disbursed to the debtor from the escrow account, leaving a balance in the account of $54,454.13. On May 10, 1984, the debtor filed a petition under Chapter 11 of the Code. Shortly thereafter, the debtor requested that the entire balance in the escrow account be released to the debtor for working capital. When PMBDA refused to grant the Bank authority to release the funds, the debtor filed the instant complaint for turnover, claiming that the funds are property of the estate and must be turned over to the debtor for use as working capital.

"Property of the estate" is generally defined by section 541(a)(1) as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541.

▮ The essential turnover provision of the Code is section 542. Section 542(a) requires an entity in possession of "property that the trustee may use, sell or lease under section 363" of the Code to deliver such property to the trustee. 11 U.S.C. § 542(a). Section 542(b) requires an entity that "owes a debt that is property of the estate and that is matured, payable on demand, or payable on order" to pay such debt to the trustee, except to the extent such debt may be offset under section 553 of this title against a claim against the debtor". 11 U.S.C. § 542(b). Accordingly, if the debtor does not have the right to possess or use the property at the commencement of the case, a turnover action cannot be a tool to acquire such rights. *In re Douglas*, 10 B.R. 283 (Bankr.D.Neb. 1981).

▮ The debtor argues that legal title to the funds vested in the debtor when PMBDA delivered the $100,000.00 check to Mr. Crawford on February 8, 1984 and the check was deposited in the escrow account in the debtor's name. Equitable title also rests with the debtor, it is argued, because the funds are for the benefit of the debtor. We disagree. Under basic escrow law, the terms and conditions of an escrow agreement must be performed before title to the escrowed funds passes. The doctrine of substantial performance does not apply, and no title passes to the grantee prior to full performance of the terms of the escrow agreement. *San Diego Wholesale Credit Men's Association v. Garner*, 325 F.2d 862 (9th Cir.1963).

In the case *sub judice*, the manifest intention of the parties as evidenced by both the loan agreement and the escrow agreement was that the debtor would not be entitled to receive the funds unless certain conditions were met. The conditions were that the debtor would apply for the funds with evidence of how they were to be allo-

**3.** *Id.,* paragraphs 1, 4, 9 of escrow agreement.

cated under the terms of the loan agreement, and PMBDA would examine the evidence presented and decide whether to release the funds. The sole issue in this case is whether the debtor had the right to use or possess those funds at the commencement of the case. Clearly, it did not. There was no automatic right given to the debtor to withdraw the funds.

The debtor-in-possession acting as trustee in a Chapter 11 case can assert no greater rights than the debtor himself had on the date the case was commenced. 4 *Collier on Bankruptcy* ¶ 541.06 p. 541–27 (15th ed. 1983).

Here the estate is entitled to exactly the same rights to the funds as the debtor held prior to the bankruptcy filing. Those rights, in our view, do not include the right to immediate use of the funds unless PMBDA consents. For the Court to order PMBDA to release the entire balance in the escrow account to the debtor would be contrary to the agreement of the parties and convert a contingent right to a non-contingent one.

In summary, we find that title to the funds in the escrow account did not pass to the debtor prior to the time when the bankruptcy was filed because the debtor had not performed in the manner required to receive further distribution of the funds and PMBDA had not consented to release the funds. Therefore, the funds are not property of the estate and the request for a turnover order is denied.