[Civ. No. 22639.   First Dist., Div. Three.   Sept. 28, 1967.]

STEPHEN O. KISH et al., Plaintiffs, Cross-complainants and Appellants, v. BAY COUNTIES TITLE GUARANTY COMPANY et al., Defendants and Appellants; MICHAEL J. SUSSMAN et al., Interveners, Cross-defendants and Appellants.

726

Molinari, Casalnuovo & Berger, Joseph L. Casalnuovo and Gary P. Vannelli for Plaintiffs, Cross-complainants and Appellants.

Vernon W. Humber and John Montgomery for Interveners, Cross-defendants and Appellants.

Peart, Baraty & Hassard, Joseph S. Rogers, Robert D. Huber and Richard G. Logan for Defendants and Appellants.

SALSMAN, J.—Emilio L. and Mary Isabelle Urrea[1] owned an interest in a motel in Reno, Nevada. Urrea listed the motel for sale with Kish & Co., a San Francisco realty firm owned by Stephen O. (and Lily D.) Kish. Michael J. (and Marylee) Sussman owned a house in San Francisco. He wanted to buy the Reno motel. In a single transaction, he sold his San Francisco house to Kish and bought the motel on a land sale contract. Sussman's equity in the house was part of the down payment. Kish loaned Sussman his commissions both on the motel and the house sales, and the amount of the loan also became a part of the down payment. Bay Counties Title Guaranty Company,[2] the escrow holder, was instructed by Kish and Sussman to prepare a note and security device. Sussman signed a note for the loan, but no security device was ever prepared. Instead, Bay Counties obtained his signature on two blank sheets of paper.

Shortly after giving up possession of his house and taking possession of the motel, Sussman realized that certain facts were not as he had supposed them. He had been told that the motel's books would be available to him, but there were none. Nor was the motel's income as high as he had been told. On advice of counsel, he notified Bay Counties and Kish that he was rescinding his contract. He left the motel and returned to the San Francisco house. He paid nothing toward the purchase of the motel or on the note to Kish. Urrea sold the motel.

Sussman successfully sued Urrea in Nevada, and obtained a judgment for rescission on the theory that Urrea had concealed from him the existence of a balloon payment due on Urrea's contract.

In the superior court Kish sued Bay Counties on five theories. First, he sought to quiet title to the money on deposit with Bay Counties. Secondly, he complained that Bay Counties breached a written agreement to provide him with a promissory note and a security instrument signed by Sussman; thirdly, he contended that Bay Counties' negligent conduct of the escrow cost him $7,110. Next, he asked for a

---

[1]For simplicity, married parties will be referred to in the singular.

[2]The notice of appeal filed on behalf of Bay Counties is filed in the name of First American Title Company of San Francisco, a change of corporate name that apparently occurred after entry of judgment herein.

declaration as to the rights and obligations of the parties under the instruments of the transaction. Finally, he sued on common counts.

Sussman intervened, accusing Kish and Bay Counties of fraud, deceit and misrepresentation, asking for the return of the consideration he gave up in the deal, seeking removal of certain trust deeds on the San Francisco house, and praying for general and exemplary damages against Kish and Bay Counties.

Kish cross-complained against Sussman, seeking to quiet title to the San Francisco house, to recover it from Sussman's unlawful detainer of it, to get rent for the time he occupied it, to recover on the promissory note Sussman signed, to enjoin Sussman from dealing with any award he might recover in the Nevada action against Urrea, and declaratory relief.

After trial to the court title to the San Francisco house was quieted in Kish, subject to the trust deeds. He was given possession. He got a joint and several judgment for $7,110 (plus $2,000 interest) against Sussman and Bay Counties, and a judgment against Sussman alone for attorney's fees and rent. Sussman lost on every count and was taxed every party's costs. He moved for a new trial; the motion was denied. He then appealed.

Kish appeals from the judgment in favor of Bay Counties as to attorney's fees. Bay Counties appeals from the judgment in favor of Kish. Aligned with Bay Counties are Raymond Flanagan (its employee) and San Francisco Auxiliary Corporation and San Francisco Savings and Loan Association (trustee and beneficiary of the first deed of trust which secured the loan Kish took to finance his purchase of the San Francisco house).

Sussman seeks to set aside the entire transaction, and to undo all its consequences. To some extent he has succeeded; the federal court ordered the motel transaction rescinded and Sussman's consideration (representing his equity in the San Francisco house) returned to him. He now wants title to the house restored as well. The trial court properly refused to do so, as we shall demonstrate.

■ There is considerable support for Sussman's contention that no title passes where the escrow holder delivers and records a deed before full performance of the escrow's terms. See, e.g., *Todd* v. *Vestermark,* 145 Cal.App.2d 374, 377 [302 P.2d 347]; *Love* v. *White,* 56 Cal.2d 192 [14 Cal.Rptr. 442, 363 P.2d 482]; *Hildebrand* v. *Beck,* 196 Cal. 141, 146 [236 P. 301,

39 A.L.R. 1076]; *Los Angeles City High School Dist.* v *Quinn,* 195 Cal. 377, 383 [234 P. 313]; *Montgomery* v. *Bank of America,* 85 Cal.App.2d 559 [193 P.2d 475]; *cf. Borgonovo* v. *Henderson,* 182 Cal.App.2d 220 [6 Cal.Rptr. 236]. But in each of the cited cases, title to property was purportedly delivered to one who himself had failed to comply with a condition precedent to or concurrent with delivery to him. In the present case, the converse is true. The condition—creation of a security instrument—was for the protection of Kish, not Sussman, but it is Sussman who now complains. (*Cf. Wales* y. *Greene,* 125 Cal.App.2d 387 [270 P.2d 534].) Kish, on the other hand, is content to keep title to the San Francisco house and the damages incidental to it. The rule for which Sussman contends would mean that the injured party cannot waive failure to comply with a condition of escrow. Such a rule is too broad. The possibility of waiver by the aggrieved party is at least recognized in *Todd* v. *Vestermark, supra,* 145 Cal. App.2d 374, 380.

Sussman argues that a condition precedent to the sale of the San Francisco house—the "successful completion of the Reno motel" deal—never occurred, because he was entitled to rescind. He also urges that the rescission may be viewed as a failure of consideration in the Kish-Sussman contract. Kish concedes that consummation of the motel deal was an express condition precedent to Sussman's obligation to sell the house, but he argues that subsequent rescission does not work backward to undo an already consummated deal. He analogizes with broker's commission cases. (See *Cochran* v. *Ellsworth,* 126 Cal.App.2d 429, 440-441 [272 P.2d 904]; *Peak* v. *Jurgens,* 5 Cal.App.2d 573, 576-577 [43 P.2d 569].)

Sussman's position is without merit. Title was properly conveyed to Kish by deed, not contract. The condition precedent to consummation of the Kish-Sussman transaction took place. Under these circumstances, even total failure of consideration will not justify rescission. *Lavely* v. *Nonemaker,* 212 Cal. 380, 383 [298 P. 976]; *Promis* v. *Duke,* 208 Cal. 420, 425 [281 P. 613]; *Duckworth* v. *Watsonville Water etc. Co.,* 170 Cal 425, 434 [150 P. 58].

Kish's further answer to Sussman's demand for rescission, that Sussman has never offered to restore the consideration he received from Kish, is meaningless, because the consideration of which he speaks is the loan of Kish's commissions, Kish's right to which Sussman here contests.

Sussman attacks Kish's right to commissions on the

sales of the house and the motel on a number of grounds. Most are in turn based on the same alleged misrepresentations by Kish or his employee (concerning the motel's income, the availability of books and the protection given the buyer of land under a contract of sale), and their failure to find out the truth for their client, Sussman. But the trial court found that there were no misrepresentations by Kish or his employees, nor any reliance by Sussman.

When we view the evidence as we must, most favorably to the judgment, we find that it supports the findings. There is conflict, of course, but once the trier of fact has resolved them, we are bound to accept the resolution.

The evidence shows that Sussman was himself suspicious of the claims made for the motel's earning potential, and agreed to buy if the annual earnings were $25,000, not the claimed $50,000. He did insist that he wanted to see the books, but directed his efforts principally to Urrea, not Kish. After being put off several times, he finally agreed to go ahead with the deal even though his demands had never been satisfied. There is no room here for us to overturn the findings of the trial court.

Sussman's contention that the protection given the purchaser under an installment land contract was also misrepresented to him is no more sound. The only evidence which conflicts with the court's finding is the testimony of Sussman himself. Although the other parties present testified that Flanagan discussed the assignability and transferability of land sale contracts, they did not say that he represented the protection to the vendee under such a contract is greater than that of a California deed of trust.

The result of the federal action in Nevada casts further doubt on Sussman's position. The district court found that Sussman was entitled to rescind because he relied on a misrepresentation about a balloon payment of $4,000, and not for any of the reasons he now advances.

We conclude that Sussman may not now ignore the outcome of those transactions into which he entered. Title to the San Francisco house was properly quieted in Kish, and Sussman therefore owes Kish the reasonable rental value of the property for the time he lived there after title passed to Kish. Despite rescission of the motel transaction, Kish is entitled to his commissions on both transactions. Sussman promised to pay Kish the sum of those commissions, and cannot now avoid that obligation.

■ Sussman argues, however, that even if the obligation exists, the protection of California's anti-deficiency legislation circumscribes it. He asserts that section 580b of the Code of Civil Procedure[3] prevents the entry of a deficiency judgment against him, because Kish's ·loan to him was of purchase money, and must be treated as a secured obligation.

Certainly the parties intended that Sussman's debt be secured. But their intentions never matured into fact. No security device was ever executed by Sussman, although two blank, legal-length sheets of white paper were signed by him. Kish was therefore without security, and even if section 580b would otherwise apply, there is nothing to which it could be applied here. *Christopherson* v. *Allen,* 190 Cal.App.2d 848 [12 Cal.Rptr. 658].

The next question is to what extent, if any, Bay Counties should be liable to Sussman for its failure to follow his escrow instructions. Sussman urges that Bay Counties bear his whole loss, on the theory that "but for" its dereliction, he would have suffered no loss because the deal would not have gone forward. In support, he quotes the following language from *Spaziani* v. *Millar,* 215 Cal.App.2d 667, 682 [30 Cal.Rptr. 658]: ■ "It is the duty of an escrow holder to comply strictly with the instructions of his principal [citations] . . ., and if he disposes of the property of his principal in violation of these instructions, or otherwise breaches that duty, he will be responsible *for any loss occasioned thereby."* (Italics ours.) From the italicized words, he concludes that a "but for" test applies to cases involving the violation of escrow instructions.

Sussman overlooks the words which follow those quoted above, and other language found in similar cases. In *Spaziani,* the court went on: "Likewise, it is the duty of an escrow holder to exercise ordinary skill and diligence in his employment [citations] . . ., and if he acts negligently he is responsible for any loss occasioned thereby, subject to the rules ordinarily applicable in the premises." And in *Amen* v. *Merced County Title Co.,* 58 Cal.2d 528 [25 Cal.Rptr. 65, 375 P.2d 33], our Supreme Court stated that if an escrow holder breaches an instruction it has contracted to perform, the injured party acquires a cause of action for breach of con-

[3]Section 580b of the Code of Civil Procedure, at the time in question, read in part as follows: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to secure payment of the balance of the purchase price of real property."

tract. The court continued "Similarly, if the escrow holder acts negligently, 'it would ordinarily be liable for any loss occasioned by its breach of duty.' "

Examination of the language quoted above shows that the courts have never intended to create a new rule of causation in fixing damages for an escrow holder's breach of contract. There is nothing in any of the cases cited which, expressly or by implication, expands the causal relationship required for liability in such a case beyond those normal to actions for breach of contract. (*Cf. Southall* v. *Security Title Ins. etc. Co.*, 112 Cal.App.2d 321 [246 P.2d 74].) Any loss to Sussman which resulted from Bay Counties' failure to provide a security device should be borne by Bay Counties. Its liability should extend no further, because Sussman's other losses were not "occasioned by" Bay Counties' error. The trial court went too far in finding that Bay Counties proximately caused Sussman no harm, but was fully justified in finding, as we infer it did, that no act of Bay Counties caused all the harm he sustained. There is evidence from which the trial court could fairly have concluded that the other losses (the rent due Kish, and attorney's fees awarded him, closing costs, moving costs and other expenses incidental to the purchase of the motel) were the ultimate result of Sussman's dissatisfaction with the motel, which led him to rescind. These losses were not within the parties' contemplation.

Sussman also bases his right to recover all his losses from Bay Counties on its alleged unauthorized practice of law. Once more we are forced to remind an appellant that it is the job of the trial court, not this court, to resolve factual conflict. The trial court has done its job here, to Sussman's disadvantage, and there is substantial evidence in support. Aside from Sussman's testimony, there is little to prove that Flanagan engaged in the unauthorized practice of law, and Flanagan denied it. Kish's testimony favors Flanagan.

The only remaining foundation for Sussman's claim against Bay Counties is his contention that its misconduct cost him the protection of California's anti-deficiency legislation, and thus made him vulnerable to a personal judgment. We now proceed to examine this contention.

What would have happened, had Bay Counties followed its instructions and provided an executed security instrument? When Sussman defaulted, Kish must first have proceeded against the Reno motel. The laws of California and Nevada so provide. (See Code Civ. Proc., § 726; Nev. Rev. Stats.,

§§ 40.430-40.450.) If the sale of the motel produced a fund large enough to satisfy all those with a security interest in it, Sussman's debt to Kish would no longer exist. The trial court found that the motel was worth enough to cover all outstanding interests in it, including the reasonable attorney's fees Sussman owed Kish by contract.

If, on the other hand, the property was insufficient to satisfy the debts, Kish might then have proceeded against Sussman for the deficiency—unless section 580b of California's Code of Civil Procedure would have prevented him from doing so.

No California court has decided whether section 580b would apply in a case such as this, involving, as it does, a California lender, a note executed and payable in California, and a borrower who lived in California when he executed the note, but who intended to live on out-of-state land bought with and securing the repayment of the proceeds of the loan. It has, however, been decided that California Code of Civil Procedure section 726, the "one-form-of-action" statute, applies only to actions on debts secured by California land. (See *First-Trust Joint Stock Land Bank* v. *Meredith,* 5 Cal.2d 214, 217 [53 P.2d 958] ; *McGue* v. *Rommel,* 148 Cal. 539, 545 [83 P. 1000] ; *Felton* v. *West,* 102 Cal. 266 [36 P. 676].)

Assuming the continued vitality of those cases, we hold nevertheless that they do not apply to the present facts. Section 726 does not prevent the entry of a deficiency judgment, but rather operates solely as a device of procedure to require recourse to the security before the lender may proceed on the borrower's personal liability. Section 580b, on the other hand, destroys rights that would otherwise exist, by directing that any satisfaction of the debt must come from the land. The protection the statute provides is a part of the contract between borrower and secured lender. The fact that the land lies in another state makes no difference, when the contract was made in California and was to be performed here.

The loss to Sussman caused by the failure of the title company to follow his instructions thus lies in his loss of protection against a deficiency judgment, which is here equal to the amount of the obligation plus interest. See *Brown* v. *Jensen,* 41 Cal.2d 193 [259 P.2d 425] ; *Venable* v. *Harmon,* 233 Cal.App.2d 297 [43 Cal.Rptr. 490].

Kish, too, was injured by Bay Counties' failure. This was a purchase money security transaction in which the purchase money debtor receives protection from personal liability. The

converse of his protection is the requirement imposed on the lender that he look first and only to the property. That property would have been sufficient to satisfy all the obligations it would have secured, had Bay Counties done what Kish told it to do. Its omission cost him the superior status of a secured creditor. For this loss, Bay Counties is liable to Kish. *Stephans* v. *Herman,* 225 Cal.App.2d 671, 673 [37 Cal.Rptr. 746] ; see also *Jeanese, Inc.* v. *Surety Title & Guar. Co.,* 176 Cal.App.2d 449, 453 [1 Cal.Rptr. 752]. The amount of Kish's loss is the sum of all Sussman's obligations that would have been secured but were not, and includes the trial court's proper award of attorney's fees against Sussman, in favor of Kish.

Insofar as the judgment of the trial court quiets title in Kish, subject to deeds of trust in favor of Adele Ferras, Frank Hoshimi and San Francisco Savings and Loan Association; restores possession of the San Francisco house to Kish; holds Sussman liable on the note and for interest, attorney's fees and rent; and holds Bay Counties liable to Kish for the principal amount of the note and interest, it is affirmed. That portion of the judgment that denies Sussman any recovery on his complaint in intervention is reversed. The trial court is directed to enter judgment in favor of Sussman for $7,110, together with interest thereon, and to award Sussman attorney's fees equal to the amount allowed Kish under the terms of Sussman's note. The trial court is further directed to declare by its judgment that payment by Bay Counties to Kish of the principal amount of the note, together with interest and attorney's fees shall operate to satisfy that portion of the judgment in favor of Sussman against Bay Counties in a like amount.

Kish and Sussman shall recover their costs on appeal against Bay Counties.

Draper, P. J., concurred.

The petitions for a rehearing were denied October 27, 1967.