[Civ. No. 10633. Fourth Dist., Div. One. Nov. 15, 1971.]

NEBO, INC., Plaintiff and Respondent, v.
TRANSAMERICA TITLE INSURANCE COMPANY, Defendant and
Appellant.

## COUNSEL

Tobin & Tobin, John J. Hopkins, Hillyer & Irwin and Oscar F. Irwin for Defendant and Appellant.

Higgs, Jennings, Fletcher & Mack and Joe N. Turner for Plaintiff and Respondent.

## OPINION

**AULT, J.**—The defendant Transamerica Title Insurance Company (Transamerica), an insurance underwriter, appeals from a judgment in a court-tried case awarding the insured Nebo, Inc. (Nebo) damages in the amount of $16,240 under a policy of title insurance.

### FACTS

In May 1964 Sacramento Savings & Loan Association (Sacramento Savings) and Nebo opened a property exchange escrow at Title Insurance and Trust Company under which Nebo was to exchange certain San Diego property for 17 improved lots in the Marysville area claimed to be owned by Sacramento Savings. This lawsuit concerns only four of the lots, Nos. 161, 163, 167 and 419. Sacramento Savings claimed title to the four lots as the purchaser at trustee's sales held under construction deeds of trust which were recorded in 1960. However, Title Insurance and Trust's preliminary title report showed title to the four lots vested in individuals named Jones, Williams and Kolb (the Jones group) who had purchased at trustee's sales held under purchase money trust deeds recorded in 1959.

Sacramento Savings contended the subordination clause contained in the purchase money trust deed gave priority to the construction loan trust deeds. However, only a few months earlier, Sacramento Savings had made this same contention and lost, in defending a quiet title action brought by Mr. Jones concerning 13 other lots in the same subdivision *which had identical title problems*. In that case, the superior court had held the conditions in the subordination clause had not been met, and title was vested in Jones. When the escrow with Nebo was opened, Sacramento Savings had appealed the adverse quiet title judgment, but Nebo originally knew nothing about this litigation.

After the escrow company's adverse title report, Nebo and Sacramento Savings considered deleting the four lots and substituting in lieu thereof

$55,000 in cash. They decided to retain the lots in the transaction when Colonial Title Guaranty Company issued a preliminary title report showing title vested in Sacramento Savings. With full knowledge of the title defect and the pending litigation, Colonial's underwriter, Transamerica, was willing to issue a policy of insurance on the transfer to Nebo *because it had previously insured Sacramento Savings' title to the four lots.*

The escrow instructions provided title to all the lots transferred, including the four in question, was to be vested in Sacramento Savings prior to the close of escrow, and that all rentals were to be prorated.

Sacramento Savings provided Nebo with a schedule showing the tenants occupying all of the lots and the amount of rent each was paying. Before close of escrow Mr. Polak, secretary of Nebo, visited each of the 17 properties, inspected the exterior and interior of the houses, but did not ask the tenants who they considered to be their landlord or where their rental money actually went. Polak was a licensed real estate broker with extensive real estate experience and knew of the title dispute at the time he visited the properties.

On July 2, 1964, the escrow closed, the rental for all 17 houses was prorated, and the deed from Sacramento Savings to Nebo was recorded. Receiving a premium of $377.60, Transamerica issued its policy in the amount of $250,000, insuring the title to the 17 Marysville lots and one other parcel. After the escrow closed, the tenants of the houses on the four lots in question refused to pay their rent to Nebo, refused to vacate the houses, and paid their rent to a rental agent who turned the money over to the Jones group.

Transamerica failed to deliver the title policy to Nebo for over four months and, before it did, Nebo demanded that Transamerica clear the title to the four lots. Transamerica's attorney, the same one who had recently defended and lost the Jones quiet title action, filed the action, but concluded Nebo's quiet title action should await determination of the appeal in the Jones case, which would be controlling since it was based upon identical issues. While Nebo acquiesced in this legal procedure, it became increasingly unhappy and financially distressed as time went by, constantly complaining to Transamerica, stating it was paying for a "pig in a poke." While Transamerica litigated, Nebo paid out $15,429.76 in payments and expenses on the four houses in question, and the Jones group continued to collect the rentals.

More than two years later, the Court of Appeal decided the Jones case, affirming the judgment of the trial court. (*Jones* v. *Sacramento Sav. &*

*Loan Assn.*, 248 Cal.App.2d 522 [56 Cal.Rptr. 741].) After the Supreme Court denied a hearing in April 1967, Transamerica made a cash settlement with the Jones group, purchased the lots in question, and on November 20, 1967, delivered clear title to Nebo, three years, four months and eighteen days late.

## PROCEEDINGS BELOW

Nebo filed this action for damages, originally naming both Transamerica and Colonial Title and Guaranty Company as defendants. The original complaint was in three counts, alleging breach of contract, negligence and fraud. By the time of trial, all but the contract action on the title policy against Transamercia had been abandoned. The trial was brief, with no real dispute over the facts. As to the four lots in question, the trial court in general found the superior title of the Jones group created a defect in title which rendered the property unmarketable; the title defect was not removed within a reasonable time and proximately caused Nebo damages in the amount of $16,240, the reasonable rental value of the four lots and houses from the close of escrow until the date Nebo received clear title. It held recovery was not barred by any exclusion in the policy. Judgment was entered accordingly.

## CONTENTIONS

On appeal, Transamerica contends:

(1) The trial court erred in failing to apply the exclusionary provisions of schedule B of the title policy to bar Nebo's recovery.

(2) The alleged unmarketability of Nebo's title did not result in any loss or damage to Nebo.

(3) In perfecting Nebo's title, Transamerica in any event fulfilled its obligations under the policy of title insurance.

## DISCUSSION

I. *The Exclusionary Provisions of Schedule B.*

Schedule B of the title policy provides in pertinent part: "*This policy does not insure against* loss or damage by reason of any of the following: Part I: . . . 2. *Any facts,* rights, interest, *or claims* which are not shown by the public records but *which could be ascertained* by an inspection of said land or *by making inquiry* of persons in possession thereof." (Italics added.)

Transamerica does not contend the trial court applied the wrong measure of damages, but rather that the court erred in awarding damages at all because of the exclusionary provision in the policy quoted above. It argues Nebo's loss resulted from its inability to secure possession of the four properties which, in turn, was due to the possessory rights of the tenants and not to the defect in title. Since the buyer was sophisticated, with admitted knowledge of the title dispute, and could have ascertained the "possessory rights of the tenants" by a simple inquiry, it asserts the exclusionary provision should bar recovery.

The argument is specious. Nebo was aware all of the 17 houses it received in the exchange of properties were leased to tenants. Rents were prorated in the escrow and no question of prepaid rents is involved. Nebo's loss, as to the four houses in question, was not occasioned by the existence of unrecorded leases, but by the fact it did not receive title to the houses in the exchange which entitled it to receive the rents. ■ The transfer of the title to real property entitles the grantee to receive the rents from tenants. (*Pierce* v. *Edwards,* 150 Cal. 650, 655 [89 P. 600]; Civ. Code, § 1111.) Had Nebo received good title to the four lots in question, as Transamerica's title policy undertook to guarantee, it could have collected the rents. Had the tenants refused payment of rent, it could have evicted them and rerented the houses. Nebo not only failed to receive the rents from the properties in question for the period between the close of escrow and the date Transamerica finally purchased and conveyed good title, but had absolutely no legal right to receive them during that period of time. ■ It is apparent the lack of legal entitlement to the rents for the period involved was due to the defect in title, which was of record, and not to the unrecorded possessory rights of the tenants in possession. The trial court correctly refused to apply the exclusionary clause which Transamerica sought to invoke and correctly assessed Nebo's damages as the rental value of the property for the period the defect in title was permitted to exist.

■ Transamerica's contention the alleged unmarketability of Nebo's title in the four lots did not result in any loss or damage, involves a sophistry of reasoning we are unable to follow. Seemingly it contends because Nebo offered no evidence it was prevented from selling the property during the time in question by reason of the title defects, and because it, Transamerica, stood willing at all times to reinsure title in any buyer, Nebo demonstrated no loss resulting from the unmarketability of title.

In any honest, straightforward sale of the four lots during the time in question, given the known defect in their title, Transamerica's policy of title insurance, interpreted as it asserts it should be interpreted in this action,

would not have made the lots marketable.[1] In any event, the policy provides for liability for damages arising out of defects in title as well as unmarketability of title. As we pointed out in the previous paragraph, Nebo's damages resulting from defects in title are readily apparent and were well established.

■ Transamerica seeks to avoid liability under the policy by contending its actions in perfecting Nebo's title three years, four months and eighteen days after the escrow closed, came within paragraph 7(c) of the policy's conditions and stipulations which reads: "7(c) No claim for damages shall arise or be maintainable under this policy (1) if the company, after having received notice of an alleged defect . . . not excepted or excluded herein removes such defect . . . within a reasonable time after receipt of such notice . . . ."

The trial court specifically found the title defects were not removed within a reasonable time. ■ What constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case. (*Sawday* v. *Vista Irrigation Dist.*, 64 Cal.2d 833, 836 [52 Cal.Rptr. 1, 415 P.2d 816].) ■ Here, the evidence shows Nebo, while receiving no rent, was required to pay out $15,429.76 to carry and maintain the four houses during the period of delay. It also shows the financial hardship and unfairness of the delay was called to Transamerica's attention on numerous occasions. These were factors the trial court could properly consider in determining whether the defect in title was removed within a reasonable time. Its finding the defect was not so removed is supported by substantial evidence and, under well established rules, cannot be disturbed by this court on appeal. (*Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 371 [210 P.2d 757].)

■ The provisions in the policy permitting the company, at its own expense and without undue delay, to litigate defects in title to final determination in a court of last resort, do not specify the company is not liable for actual damages resulting from the defect while the litigation goes on. Any ambiguity in the policy in this respect must be construed against the insurer. (*Gray* v. *Zurich Insurance Co.*, 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d 168]; *E. A. Robey & Co.* v. *City Title Ins. Co.*, 261 Cal.App. 2d 517, 522 [68 Cal.Rptr. 38].) Moreover, Transamerica did not perfect

---

[1]In effect Transamerica contends Nebo should have passed the problems it unexpectedly inherited on to some other buyer whom it would have been happy to insure. Transamerica's willingness to insure title under the circumstances of the case gives no real indication of marketability of title. It obviously was willing to insure Nebo's title, in the first place, because it had already exposed itself to liability by insuring Nebo's predecessor in title.

Nebo's title through litigation. The company gambled on litigation and lost, finally acquiring good title by purchase. But the title Transamerica acquired and later conveyed to Nebo was not the title Nebo had bargained for in the exchange transaction and which Transamerica, with full knowledge of the facts and in its own self-interest, undertook to insure. The title finally furnished did not carry with it the right to collect rents from the close of escrow. The contention Transamerica fulfilled its obligation under the title policy by finally furnishing title three years, four months and eighteen days after the close of escrow is without merit.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.