[No. D002319. Fourth Dist., Div. One. Feb. 27, 1987.]

NATIVE SUN INVESTMENT GROUP, Plaintiff and Appellant, v. TICOR TITLE INSURANCE COMPANY OF CALIFORNIA, Defendant and Respondent.

**COUNSEL**

Shernoff & Levine, Harvey R. Levine and Carl J. DePasquale for Plaintiff and Appellant.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre, Thomas E. Sharkey, Sternberg, Eggers, Kidder & Fox, James R. Sternberg, Parkinson, Wolf, Lazar & Leo, Richard B. Wolf and Michael W. Connally for Defendant and Respondent.

**OPINION**

**LEWIS, J.—**

### STATEMENT OF THE CASE

Plaintiff and appellant Native Sun Investment Group, a California limited partnership (Native Sun), appeals from a judgment entered in favor of defendant and respondent Ticor Title Insurance Company of California (Ticor). On appeal, Native Sun argues that the trial court's rulings on five issues of law were erroneous. Because we hold that the trial court correctly applied the law to the facts encompassed by its statement of decision, we affirm the judgment.

### FACTUAL SUMMARY

In late 1979 and early 1980 Native Sun purchased two adjoining parcels of land on the coast in the City of Carlsbad. Native Sun paid a total of

$2,090,000 for the parcels, and Ticor insured Native Sun's title to each of them including coverage of any claim to fee title by the state as sovereign. Ticor's policies, however, excepted from coverage any easements, liens or encumbrances which were not shown by public records.

After purchasing the parcels, Native Sun proceeded with its plan to develop them. On August 19, 1980, while Native Sun's development plans were pending before the City of Carlsbad, the State of California sent the city a letter in which it claimed an interest in the parcels. On September 15, 1980, Native Sun gave Ticor notice of the state's claim.

On December 5, 1980, representatives of Ticor met with representatives of Native Sun. At the meeting, Ticor agreed that it would pay for the cost of defending Native Sun against any claims made by the state. Ticor also agreed to indemnify Native Sun for any loss occasioned by the state's successful claim as sovereign to fee title over any portion of Native Sun's land. However, Ticor advised Native Sun that it would not indemnify Native Sun for any loss occasioned by the state's enforcement of so-called *Gion-Dietz* rights.

In *Gion* v. *City of Santa Cruz* (1970) and *Dietz* v. *King* (1970), considered together at 2 Cal.3d 29 [84 Cal.Rptr. 162, 465 P.2d 50] (*Gion-Dietz*), the Supreme Court implied public dedication of property rights as a result of historic public use. (*Id.* at p. 43.) Ticor believed that Native Sun's parcels were subject to *Gion-Dietz* claims and that such unrecorded claims were not covered by its policies.

In the spring of 1981 the state made a settlement proposal which would have required Native Sun to deed a substantial portion of its land to the state. Native Sun refused to accept the state's offer unless Ticor agreed to pay it the value of the land it deeded to the state. In the alternative, Native Sun offered to sell all of its interest in both parcels to Ticor for the amount Native Sun had invested in the property.

Ticor declined Native Sun's proposals. Ticor did not believe the state had adequately substantiated its claims as sovereign. Thus, Ticor informed Native Sun it would not pay Native Sun the market value of the land the state wanted. Ticor also declined to purchase Native Sun's lands for the amount Native Sun had invested because it believed their value might be diminished substantially by the state's *Gion-Dietz* rights. Ticor did, however, offer to prosecute a quiet title action against the state as a means of clearing Native Sun's title. Native Sun agreed with that approach during the summer of 1981 and signed a verified complaint on October 31, 1981.

The complaint filed on Native Sun's behalf was drafted by Alan Jampol, an attorney selected by Ticor. Although selected and paid by Ticor, Jampol felt that his only client was Native Sun. Jampol prosecuted Native Sun's claims throughout 1982, except for a period during June and July when Native Sun asked him to forego the litigation while it again pursued settlement with the state.

On the eve of trial in February 1983, the state made a settlement proposal which both Jampol and Ticor felt was as good as Native Sun could expect if it went to trial. Native Sun consented to the settlement.

In order to extinguish the public's rights, the settlement required a "validation trial" at which any interested member of the public might challange the settlement. Both Jampol and Ticor felt the validation proceeding was necessary to fully protect Native Sun's interests.

The validation trial took place in December 1983 and a judgment setting forth the terms of the settlement was entered. In February 1984 the time in which to appeal the judgment expired. After the judgment was final, Ticor appraised the value of the land Native Sun was required to deed to the state. The highest appraisal was $10,000 and Ticor paid that amount to Native Sun on March 15, 1984.

## ISSUES

In this proceeding sounding in both contract and tort Native Sun seeks recovery of the interest payments, property taxes and attorney fees it incurred between September 1980 and March 1984 in maintaining its interest in the two parcels. Below, the case was tried by the court without a jury. At the close of Native Sun's evidence, the trial court granted Ticor's motion for judgment pursuant to Code of Civil Procedure section 631.8. The court read into the record a lengthy statement of decision and the parties waived entry of any further findings.

On appeal, Native Sun does not challenge the trial court's factual findings. Rather, Native Sun asserts that the trial court erroneously applied the law in holding that: 1. Native Sun's damages were limited to the diminution in value it suffered by way of its settlement with the state;

2. The state's claims did not render Native Sun's title unmarketable at the time Ticor issued its policies;

3. Native Sun was not entitled to recover attorney fees incurred by counsel it had retained;

4. It was proper for Ticor to consider its own interests in responding to Native Sun's settlement demands; and

5. In the alternative, Native Sun's claims were barred by the statute of limitations.

Because the trial court's resolution of the first four of these issues was proper, we need not consider its ruling on the statute of limitations.our of these issues was proper, we need not consider its ruling on the statute of limitations.ND30

### The Trial Court's Findings

At the time the trial court rendered its decision, Code of Civil Procedure section 631.8, subdivision (a), provided:[1] "After a party has completed his presentation of evidence in a trial by the court, the other party, without waiving his right to offer evidence in support of his defense or in rebuttal in the event the motion is not granted, may move for a judgment. The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings as provided in Sections 632 and 634 [of this code] . . . ."

■ When a motion under section 631.8 is granted, the trial court's factual findings are entitled to the same respect on appeal as any other findings and may not be set aside if they are supported by substantial evidence. (*Swanson* v. *Skiff* (1979) 92 Cal.App.3d 805 [155 Cal.Rptr. 280]; *Slater* v. *Alpha Beta Acme Markets, Inc.* (1975) 44 Cal.App.3d 274 [118 Cal.Rptr. 561, 72 A.L.R. 3d 1264]; *Rodriguez* v. *North American Rockwell Corp.* (1972) 28 Cal.App.3d 441 [104 Cal.Rptr. 678].) ■ In this case Native Sun did not request any more specific findings than those read into the record by the trial court. Thus in addition to the general rule, which requires that the court's findings be liberally construed in favor of the judgment (*Auslen* v. *Johnson* (1953) 118 Cal.App.2d 319 [257 P.2d 664]), in this case we may also resort to implied findings to uphold the judgment. (*In re Marriage of Dawley* (1976) 17 Cal.3d 342, 354 [131 Cal.Rptr. 3,551 P.2d 323]; *Ripani* v. *Liberty Loan Corp.* (1979) 95 Cal.App.3d 603, 614 [157 Cal.Rptr. 272].)

---

[1]Code of Civil Procedure section 631.8, subdivision (a), now reads in part: "The court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make a statement of decision as provided in Sections 632 and 634, or may decline to render any judgment until the close of all the evidence." (Stats. 1986, ch. 540, § 13.)

MEASURE OF DAMAGES

The trial court found: "[A]s a matter of law, carrying costs—and by carrying costs, I define that to mean interest, taxes, and other costs associated with owning property and carrying a mortgage — are not coverable as an incident of the damages insured against here. They are costs that the plaintiff, any plaintiff, would have incurred in any event and, I believe, are excluded from recovery under the policy."

In refusing to compensate Native Sun beyond the diminution in value paid by Ticor, the trial court relied expressly upon the holdings in *Overholtzer v. Northern Counties Ins. Co.* (1953) 116 Cal.App.2d 113 [253 P.2d 116], and *Nebo, Inc. v. Transamerica Title Ins. Co.* (1971) 21 Cal.App.3d 222 [98 Cal.Rptr. 237]. In *Overholtzer* the court held that the insured is entitled to the diminution in value caused by a title defect measured at the time the defect is discovered rather than at the time of purchase. (*Overholtzer, supra,* 116 Cal.App.2d 113, 130.) In explaining its holding, the *Overholtzer* court said: "When a purchaser buys property and buys title insurance, he is buying protection against defects in title to the property. He is trying to protect himself then and for the future against loss if the title is defective. The policy necessarily looks to the future. It speaks of the future. The present policy is against loss the insured 'shall sustain' by reason of a defect in title. The insured, when he purchases the policy, does not then know the title is defective. But later, after he has improved the property, he discovers the defect. Obviously, up to the face amount of the policy, he should be reimbursed for the loss he suffered in reliance on the policy, and that includes the diminution in value of the property as it then exists, in this case with improvements. Any other rule would not give the insured the protection for which he bargained and for which he paid." (*Ibid.*)

In *Nebo, supra,* 21 Cal.App.3d 222, the plaintiff obtained 17 houses in an exchange. Transamerica insured the plaintiff's title to all 17. After the close of escrow, the grantee at a prior foreclosure sale asserted title to four of the houses and the tenants in those four houses paid their rent to the prior grantee's agent. The trial court awarded the insured the rent lost on the four houses while Transamerica cleared its title. On appeal, Transamerica argued that the plaintiff's loss was caused not by any defect in the title it had insured but by the tenant's unrecorded, and hence uninsured, possessory rights. Rejecting Transamerica's theory, the *Nebo* court said: "Nebo's loss, as to the four houses in question, was not occasioned by the existence of unrecorded leases, but by the fact it did not receive title to the houses in the exchange which entitled it to receive the rents. The transfer of the title to real property entitles the grantee to receive the rents from tenants. [Citations.] Had Nebo

received good title to the four lots in question, as Transamerica's title policy undertook to guarantee, it could have collected the rents. Had the tenants refused payment of rent, it could have evicted them and rerented the houses. Nebo not only failed to receive the rents from the properties in question for the period between the close of escrow and the date Transamerica finally purchased and conveyed good title, but had absolutely no legal right to receive them during that period of time. It is apparent the lack of legal entitlement to the rents for the period involved was due to the defect in title, which was of record, and not to the unrecorded possessory rights of the tenants in possession." (*Nebo, Inc.* v. *Transamerica Title Ins. Co., supra,* 21 Cal.App.3d at p. 227.)

Commenting on *Overholtzer* and *Nebo,* the trial court here said: "We have talked about the *Nebo* case, and the question arises whether it acts to or establishes any different measure of damages than the *Overholtzer* case. The court finds that it did not, and indeed, it appears to be an application of the *Overholtzer* standard to the facts before it in regarding lost rents during the period of—not directly good faith litigation, but no award of carrying costs during that same period."

 Like the trial court, we find *Overholtzer* and *Nebo* harmonious. Taken together, those cases allow an insured to recover damages *caused* by a defect in title covered by the policy. (Cf. *Kish* v. *Bay Counties Title Guaranty Co.* (1967) 254 Cal.App.2d 725, 732 [62 Cal.Rptr. 494].) By measuring the value of real estate without a given defect and subtracting the value of the land with the defect, a diminution in value measure of damages, such as the one used in *Overholtzer,* isolates the damages caused by the defect. However, as the *Nebo* opinion demonstrates, diminution in value is not the only means of drawing a causal connection between proven damages and a title defect. In *Nebo,* lost rents were recoverable because the plaintiff was able to show that in the absence of the defect he would have been able to collect rent on the four houses in dispute. (*Nebo, supra,* 21 Cal.App.3d at p. 227.)

 In this case it is apparent the trial court found that Native Sun's carrying costs were not occasioned by any defect covered by Ticor's policies. In particular the trial court found that settlement with the state in 1981 and 1982 was hampered by Native Sun's insistence that Ticor compensate it for the value of any land the state was demanding, that Native Sun's liability to the state on any theory other than *Gion-Dietz* was never reasonably apparent, and that the *Gion-Dietz* claims were not covered by Ticor's title policy. On appeal, Native Sun does not challenge these findings. Read together, they imply that Native Sun's development plans were delayed, if at all, by assertion of the uncovered *Gion-Dietz* claims. (See *In re Marriage*

*of Dawley, supra,* 17 Cal.3d at p. 354.) Thus, under the holdings in *Overholtzer* and *Nebo,* there was no causal connection between any delay and a covered title defect. Under those circumstances, the trial court's refusal to award Native Sun the carrying costs incurred during litigation of the state's claims was proper.

### MARKETABILITY

■ Marketable title: "'... must be free from reasonable doubt, and such that a reasonably prudent person, with full knowledge of the facts and their legal bearings, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear upon such transactions, be willing to accept and ought to accept. It must be so far free from defects as to enable the holder, not only to retain the land, but possess it in peace, and, if he wishes to sell it, to be reasonably sure that no flaw or doubt will arise to disturb its market value....'" (*Mertens* v. *Berendsen* (1931) 213 Cal. 111, 113 [1 P.2d 440]; *Hocking* v. *Title Ins. & Trust Co.* (1951) 37 Cal.2d 644, 650-651 [234 P.2d 625].)

■ As we have previously noted the trial court found that Native Sun's liability to the state on any claim covered by Ticor's policy was never reasonably apparent. Indeed the trial court labeled the state's sovereign claims "meritless." These findings, unchallenged on appeal, foreclose any claim that on the dates Ticor issued its policies, the insured title was subject to the reasonable doubt required by *Mertens* and *Hocking.*

The fact that later the state formally asserted both meritless sovereign and somewhat stronger, but uninsured, *Gion-Dietz* claims, does not expand Ticor's liability under the coverage provisions of its policies. (*Safeco Title Ins. Co.* v. *Moskopoulos* (1981) 116 Cal.App.3d 658, 666 [172 Cal.Rptr. 248].) As the court in *Moskopoulos* said in rejecting such a "bootstrapping" attempt to come within the identical marketability provisions of a California Land Title Association policy: "As to unmarketability of appellant's title, there is nothing in the record that indicates that the title was in any way unmarketable on the effective date of the policy. Any effect the recording of the Klass lis pendens had on the marketability of the title occurred after the effective date of the policy and is outside the policy coverage." (*Ibid.*)

Contrary to Native Sun's argument on appeal, application of the holding in *Safeco Title Ins. Co.* v. *Moskopoulos* in this case will not eviscerate the marketability protection of the standard CLTA policy. The state's claims as sovereign were based on a theory under which its interest in the property preceded Native Sun's. Had the sovereign claims been viable, they would

have plainly detracted from the marketability of Native Sun's title on the date the policies were issued. However, the trial court found that the sovereign claims were meritless. The state's assertion of the claims did not improve their relative merit. Under *Moskopoulos* the mere fact that the claims were asserted, after the dates of the policies, did not affect the marketability of the title insured by Ticor.

## ATTORNEY FEES

An insurer's duty to defend requires that it pay for counsel selected and controlled by the insured when resolution of a third party claim will bear directly on the outcome of any coverage dispute between the insurer and its insured. (*McGee* v. *Superior Court* (1985) 176 Cal.App.3d 221, 227 [221 Cal.Rptr. 421]; *San Diego Federal Credit Union* v. *Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358, 375 [208 Cal.Rptr. 494, 50 A.L.R. 4th 913].) As the court in *Cumis* explained: "In the usual tripartite relationship existing between insurer, insured and counsel, there is a single, common interest shared among them. Dual representation by counsel is beneficial since the shared goal of minimizing or eliminating liability to a third party is the same. A different situation is presented, however, when some or all of the allegations in the complaint do not fall within the scope of coverage under the policy. In such a case, the standard practice of an insurer is to defend under a reservation of rights where the insurer promises to defend but states it may not indemnify the insured if liability is found. In this situation, there may be little commonality of interest. Opposing poles of interest are represented on the one hand in the insurer's desire to establish in the third party suit that the insured's 'liability rested on intentional conduct' [citation], and thus no coverage under the policy, and on the other hand in the insured's desire to 'obtain a ruling . . . such liability emanated from the nonintentional conduct within his insurance coverage' [citation]. Although issues of coverage under the policy are not actually litigated in the third party suit, this does not detract from the force of these opposing interests as they operate on the attorney selected by the insurer, who has a dual agency status [citation]." (*Cumis, supra,* 162 Cal.App.3d at pp. 364-365, fns. omitted.)

On appeal, Native Sun argues that although Ticor paid Mr. Jampol's fees, Ticor is also liable for the attorney fees Native Sun paid its independent counsel during the pendency of the state's claims. (See fn. 2) Native Sun argues that because Ticor reserved its rights with respect to the *Gion-Dietz* claims, *Cumis* requires reimbursement of independent counsel's fees.[2]

---

[2]Native Sun also contends that the trial court erred in refusing to order production of a memorandum prepared by Hollis Carlile, counsel retained by Ticor to represent its interest,

■ Native Sun reads *Cumis* too broadly. Counsel selected and paid by an insurer is not subject to a conflict which gives rise to the right to independent counsel every time the insurer proposes to provide a defense under a reservation of rights. (*McGee v. Superior Court, supra,* 176 Cal.App.3d at p. 226.) As the *McGee* court explained: "The crucial fact in *Cumis,* as the court took pains to point out and explain several times, was that the insurer's reservation of rights on the ground of noncoverage was based on the nature of the insured's conduct, which as developed at trial [of the third party claim] would affect the determination as to coverage." (*Ibid.*)

In *McGee,* where the reservation of rights was based on a resident relative exclusion in an automobile liability policy, independent counsel was not required because resolution of the third party claim would not affect the coverage dispute. (*McGee, supra,* 176 Cal.App.3d at p. 227.)

■ In this case, resolution of the state's claims did not control the outcome of the parties' coverage dispute. Coverage of the *Gion-Dietz* claim turned solely upon interpretation of Ticor's policy. The action Jampol brought against the state did not place in issue any rule of law or fact which would bear upon the meaning of Ticor's policy. Thus, the holding in *Cumis* does not extend to the precise circumstances presented here.

Because the state was asserting uncovered claims, it might be argued that to the extent Jampol's representation could result in liability on the uncovered claims, as opposed to the covered claims, the rationale of *Cumis* nonetheless requires compensation of independent counsel. However, in this case we decline to take that step. The trial court found that Ticor gave Jampol: "carte blanche to litigate all the issues including the issues of *Gion-Dietz,* covered and uncovered; and that at all times ... Mr. Jampol proceeded diligently to litigate the matters that he was charged with on behalf of his client Native Sun. At no time, the court finds, did Mr. Jampol prefer the defendant's interest to those of his client, Native Sun, nor did he allow questions of coverage—though he was informed of them—to interfere with his litigation decisions regarding the third party claims." Under these circumstances, where the retained attorney in fact was not subject to the

shortly after meeting with Jampol. Native Sun contends the memorandum is subject to Evidence Code section 962, the joint-client exception to the attorney-client privilege. We disagree. An insurer's communication with an attorney, other than the one retained by the insurer to defend its insured, are privileged notwithstanding Evidence Code section 962. (*Houston Gen. Ins. Co. v. Superior Court* (1980) 108 Cal.App.3d 958, 966-967 [166 Cal.Rptr. 904].)

conflicting forces which gave rise to *Cumis,* an extension of *Cumis* is not warranted.[3] Ticor fulfilled its duty to defend.

TICOR'S RESPONSE TO NATIVE SUN'S SETTLEMENT DEMANDS

Native Sun contends that Ticor acted improperly in refusing to bear the financial burden of the state's 1981 and 1982 settlement demands and in placing conditions on its willingness to assume part of Native Sun's mortgage indebtedness. In ruling on these contentions the trial court said: "What about the conditions and discussions that went on regarding those outside-the-policy negotiations? It is very clear to the court that the company, in those negotiations, was motivated subsequently and in very large part by whether those settlements would be in its own economic best interests. The court finds that to have been the case and finds nothing improper about that as those negotiations were outside the policy. There is nothing improper about the company or any other litigant taking its economic advantage into account so long as the line isn't crossed and those economic advantage considerations do not affect the company's pursuit of its obligations under the policy to litigate in good faith, as I found that they were doing."

Like the trial court's ruling on damages, these comments must be considered in light of the court's finding that the *Gion-Dietz* claims were not covered by Ticor's policies and that liability on the state's remaining claims was never reasonably apparent. In short, the court found that Ticor was being asked to pay a claim for which it was not liable and that under those circumstances it was proper for the insurer to consider its own economic interests. In this context the trial court's statement of the law was proper.

There is nothing in *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809 [169 Cal.Rptr. 691, 620 P.2d 141], *Silberg* v. *California Life Ins. Co.* (1974) 11 Cal.3d 452 [113 Cal.Rptr. 711, 521 P.2d 1103], *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032], or *McCormick* v. *Sentinel Life Ins. Co.* (1984) 153 Cal.App.3d 1030 [200 Cal.Rptr. 732], which requires an insurer to indemnify a loss for which it is not liable—even if payment would be in the best interests of its insured. As the court in *McCormick, supra,* 153 Cal.App.3d at page 1043, said: "Obviously the duty of good faith and fair dealing does not require an insurer to honor 'every claim presented to it.' [Citation.] Nor does it require an insurer to pay 'meritless claims.' "

---

[3]We also note that the judgment in the state litigation became final on February 14, 1984, and the opinion in *Cumis* was filed on December 3, 1984. Thus, in this case, Ticor did not have *Cumis* for guidance.

CONCLUSION

Because we have rejected Native Sun's first four assignments of error, we need not consider the trial court's alternative finding that Native Sun's claims are barred by the statute of limitations.

Judgment affirmed.

Todd, J., concurred.

**WIENER, Acting P. J.,** Concurring.—There is substantial evidence to support the trial court's finding that the assertion of the uncovered *Gion-Dietz* claim was the legal cause of Native Sun's damages. I am surprised that Native Sun has not argued that a title insurer is liable for damages where the damages may be concurrently caused by both covered and uncovered claims. Native Sun, however, does not say that Ticor is liable for damages caused by the unmarketability of the property even if those damages were concurrently caused by the assertion of the *Gion-Dietz* claims. Consequently since this issue was neither presented nor argued and there is no challenge to the sufficiency of the evidence any error resulting from the trial court's incorrect finding of marketability becomes harmless.

I also believe there is substantial evidence to support the trial court finding that Jampol as Native Sun's attorney acted in accordance with his professional responsibilities toward his client and thus Ticor is not liable for additional attorney's fees incurred by Native Sun. Accordingly, because of the foregoing I concur in the result reached by the majority.