1997 ME 137

**Martin HODAS, Trustee of the Martin Hodas Defined Benefit Pension Plan,**

v.

**FIRST AMERICAN TITLE INSURANCE CO.**

Supreme Judicial Court of Maine.

Argued March 4, 1997.
Decided June 25, 1997.

Jens-Peter Bergen (orally), Wonderbrook Center, Kennebunk, for plaintiff.

John B. Emory and Andrew W. Sparks (orally), Drummond & Drummond, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

[¶ 1] First American Title Insurance Company appeals from the judgment entered in the Superior Court (Cumberland County, Bradford, J.) in favor of Martin Hodas on his claim for a breach of a title insurance policy. First American argues the court misconstrued the policy and erred in determining that Hodas suffered a compensable loss. By cross-appeal, Hodas argues the court erred in failing to find that First American engaged in unfair claims practices, pursuant to

24–A M.R.S.A. § 2436–A (1990). We disagree with both contentions, and affirm the judgment.

[¶ 2] In 1989 Hodas received a mortgage from Keith Studer to secure a $71,000 loan and any future advances to be made to Studer. The mortgage encumbered property Studer owned in South Portland. Hodas contracted with First American to insure his mortgage interest against defects in Studer's title. The insurance contract was evidenced by a policy issued by First American to Hodas. The policy stated there were no interests in the property other than those of Studer and Hodas. Subsequently Hodas assigned the mortgage to a pension plan, of which he is the trustee.

[¶ 3] In 1990 Studer defaulted on the loan and Hodas obtained a judgment of foreclosure on the property. A foreclosure sale took place in April 1991, at which Hodas bought the property for $80,000. The foreclosure sale report Hodas filed stated that Studer's total outstanding debt secured by the mortgage, including future advances, was $108,348.87.

[¶ 4] Hodas began to market the South Portland property immediately after obtaining title. In September 1991 he contracted to sell the property to Leonard Lawrence for $57,500. In preparation for the closing, Lawrence discovered a title defect in the form of a previously undiscovered ownership interest retained by Sara Studer, the former spouse of Keith Studer. On November 6, 1991, Hodas filed a notice of claim with First American, which responded a week later that it would exercise its right under the policy to pursue a quiet title action to extinguish Sara Studer's interest. As a result of the title defect, Lawrence rescinded the purchase and sale agreement.

[¶ 5] A short time later Hodas made another demand on First American for indemnification pursuant to the policy. First American rejected the demand, stating again that it intended to pursue a quiet title action against Sara Studer, and, on December 12, 1991, retained counsel to do so. During this time Hodas continued to market the property, and in March 1992 sold it to John Somers for $40,000. On April 17, 1992, First American's attorney filed a quiet title action in the name of Somers against Sara Studer. One year later, on April 21, 1993, a summary judgment on the quiet title action was entered in favor of Somers.

[¶ 6] In this suit Hodas alleges First American breached its contract by failing to indemnify him for the loss he sustained as a result of the title defect. After a jury-waived trial a judgment was entered for Hodas for $18,000, reflecting the difference between the sale price he would have received from Lawrence and the price Hodas received from Somers plus real estate taxes Hodas paid after the Lawrence sale fell through. This appeal followed.

## I.

### Breach of Contract

[¶ 7] First American argues it did not breach its insurance contract with Hodas because the quiet title action against Sara Studer was eventually successful. First American directs our attention to section 7 of the policy, which provides:

### 7. LIMITATION OF LIABILITY

No claim shall arise or be maintainable under this policy (a) if the Company, after having received notice of an alleged defect, ... by litigation or otherwise, removes such defect ... within a reasonable time after receipt of such notice; (b) in the event of litigation until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or to the lien of the insured mortgage ...; or (c) for liability voluntarily assumed by an insured in settling any claim or suit without prior written consent of the Company.

Relying on clause (b), First American contends it fulfilled its obligations by obtaining a final judgment extinguishing Sara Studer's interest in the property. We disagree. Clause (a) gives First American the right to cure a title defect and thus avoid a claim under the policy, but only if it does so "within a reasonable time" after receiving a notice of the defect. The trial court found that First

American failed to satisfy that requirement, thus breaching its insurance contract.

[¶ 8] What constitutes a reasonable time to cure a title defect, in the context of a title insurance policy, is a question of fact. *See Nebo v. Transamerica Title Ins. Co.*, 21 Cal.App.3d 222, 98 Cal.Rptr. 237, 241 (1971) (construing language substantially similar to section 7(a)). Findings of fact are reviewed for clear error and will be upheld unless there is no competent evidence in the record to support them. *H.E. Sargent, Inc. v. Town of Wells*, 676 A.2d 920, 923 (Me.1996). The court's finding that First American failed to cure the title defect within a reasonable time is based on competent evidence and therefore is not clearly erroneous.[1]

## II.

### Compensable Loss

[¶ 9] First American contends the court overlooked the distinction between loan policies and owner policies of title insurance, which led the court to conclude erroneously that Hodas suffered a compensable loss. A loan policy, such as Hodas had in this case, protects the value of the mortgagee's security interest against loss due to undisclosed title defects. An owner policy protects the value of an owner's fee interest against similar risks. The presence of a title defect immediately results in a loss to the holder of a fee interest since resale value will always reflect the cost of removing the defect. In contrast, the holder of a loan policy incurs a loss only if the security for the loan proves inadequate to pay off the underlying insured debt due to the presence of undisclosed defects. *Blackhawk Production Credit Ass'n v. Chicago Title Ins. Co.*, 144 Wis.2d 68, 423 N.W.2d 521, 525 (1988). *See also Focus Inv. Assocs. v. American Title Ins. Co.*, 992 F.2d 1231, 1237 (1st Cir.1993) (in the case of loan policies "what is insured is the loss resulting from a defect in the security"); D. Barlow Burke, Jr., *Law of Title Insurance* § 2.1.1, at 2:7 (2d ed. 1993) (there is no loss on a loan policy unless the amount of the undisclosed lien reduces the value of the property to less

than the underlying debt or, because of the lien, the insured fails to recover the amount of its loan).

[¶ 10] First American contends Hodas suffered a loss covered by his loan policy only if, on the date of foreclosure, the property's fair market value was less than the value of his insured interest and the reduced fair market value was the result of the undisclosed title defect. Thus, First American argues, because Hodas was not aware of the defect at the time of foreclosure and did not present evidence of the property's fair market value at that time, he failed to prove that he suffered a compensable loss.

[¶ 11] First American's position is undermined by section 2(a) of the policy, which provides for the continuation of coverage in the event the mortgaged premises are purchased at foreclosure by the insured mortgagee:

2.(a) CONTINUATION OF INSURANCE AFTER ACQUISITION OF TITLE

This policy shall continue in force as of Date of Policy in favor of an insured who acquires all or any part of the [mortgaged premises] by foreclosure ...; provided that the amount of insurance hereunder after such acquisition ... shall not exceed the least of:

(i) the amount of insurance stated in Schedule A;

(ii) the amount of the unpaid principal of the indebtedness ... plus interest thereon, expenses of foreclosure and amounts advanced to protect the lien of the insured mortgage and secured by said insured mortgage at the time of acquisition ...; or

(iii) the amount paid by any government agency ... in the acquisition of such estate....

The effect of this section is clear. After an insured mortgagee purchases the mortgaged premises at foreclosure, coverage continues provided there remains unpaid principal indebtedness. Coverage is limited, however, to

---

1. We express no opinion whether the attorney who brought the quiet title action acted with reasonable care and diligence. Our inquiry focuses only on First American's contention that it properly invoked its right pursuant to the contract to quiet title rather than pay Hodas's claim.

the lesser of the outstanding indebtedness or the stated policy limit. In the case at bar, after Hodas purchased the Studer property at foreclosure for $80,000, there remained a loan deficiency of $28,348.87. That amount, since it was less than the stated policy limit of $71,000, comprised the maximum limit of Hodas's recovery provided by the continued coverage.

[¶ 12] Although the court may have treated the damage award as if Hodas had coverage as an owner rather than a lender, the result was correct. It serves no useful purpose to characterize the continued coverage as falling within the ambit of either a loan policy or an owner policy of title insurance. Neither of those labels, as commonly understood, accurately describes the nature and effect of the continued coverage. Regardless of its designation, however, the continued coverage is clearly provided for in the language of section 2(a) of the policy. In this case the continued coverage would indemnify Hodas for any loss caused by undisclosed defects in the title of the formerly mortgaged premises, but only to the extent of any unpaid indebtedness. Due to the presence of the title defect discovered after Hodas entered into the purchase and sale agreement with Lawrence, Hodas suffered a loss of $17,500, which was less than the unpaid indebtedness of $28,348.87. In addition, he was forced to pay an additional $500 in real estate taxes prior to the ultimate sale to Somers. Thus the court properly concluded that Hodas was entitled to recover $18,000 on the policy.

[¶ 13] Finally, we find no merit in Hodas's contention that the court should have assessed penalties against First American, pursuant to 24–A M.R.S.A. § 2436–A, for engaging in unfair claims practices.

The entry is:

Judgment affirmed.

